**UNITED STATES of America,
Appellee,**

v.

**Gennaro J. ANGIULO, Defendant,
Appellant.**

**No. 73–1199.**

United States Court of Appeals,
First Circuit.

Heard Sept. 12, 1973.

Decided Oct. 11, 1973.

**38**

Joseph J. Balliro, Boston, Mass., with whom Henry D. Katz, Boston, Mass., was on brief, for appellant.

Gerald E. McDowell, Sp. Atty., U. S. Dept. of Justice, with whom James N. Gabriel, U. S. Atty., and Jeffrey M. Johnson, Sp. Atty., U. S. Dept. of Justice, were on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

This is an appeal from a judgment entered May 31, 1973, convicting the defendant of impeding a federal officer in violation of 18 U.S.C. § 111. The jury began its deliberations at approximately 6:20 p. m. and two hours later, after informing the court that it was unable to agree, recessed for the evening. At 11:15 the next morning, after two hours of deliberation, the jury informed the court that it was deadlocked and "unable to make any unanimous decision as to the guilt or innocence on the evidence given us."

At that juncture the court asked the reporter to play back the original instructions to the jury, and the court gave the jury the following supplementary instructions:

"Just remember this—I am sure that you are aware of it—that you are just as capable as any other jury would be to decide this case, and if it were tried again, it would probably be tried in just about the same way on just about the same evidence. Also, as you know, this case is expensive to try, just as expensive for the government as it is for the defendant, and I would like to have you think these things over again, and proceed with your deliberations so we can get these things behind us. I would urge you to do your very best to arrive at a verdict, a unanimous verdict. . . ."

The jury then retired for further deliberation, but at 2:10 p. m. again informed the court that it was deadlocked. At 3:25 p. m. the court gave the jury the following supplementary instructions:

"Well, all I can say is that I will ask you to continue in that field, do the very best you can, because we don't want to try this case but one time. We have great confidence in the sincerity of all the jurors. I will ask you to retire again and devote your honest and sincere efforts to the reconciliation of differences among you jurors. This is not a very difficult case, when you come right down to it, it is just a matter of fact. I think it is just a question of resolving the facts in the case. I think you should all try again, do the best you can."

The jury again returned for further deliberation, appellant's trial counsel moved for a mistrial, and two hours later, at 5:37 p. m., the jury returned a verdict of guilty.

On appeal, the defendant contends that the trial court erred in giving two supplementary instructions to the jury, both of which substantially departed from the formulation of the *Allen* charge approved by this court in United States v. Flannery, 451 F.2d 880, 883 (1971).

We have come a long way from the era when deadlocked jurors were locked into an oxcart and carried about with the judge until they reached a ver-

dict,[1] but perhaps not far enough. A supplementary charge instructing a deadlocked jury to go back again and try to reach a verdict, although permitted in this circuit, *see* United States v. Flannery, *supra*, must be used with great caution. As we said in *Flannery*, at 883, "The caution required dictates also that trial courts should avoid substantive departures from the formulations of the charge that have already received judicial approval . . . . And in all events, the court should be careful to include all those elements of the original charge designed to ameliorate its coercive effect, and to avoid language which might heighten it." For the judge, without ameliorative "balancing" language, to instruct a deadlocked jury to reexamine its position may be prejudicial to a defendant in at least three ways. First, either directly or by implication it may place the burden of reconsideration upon jurors holding a minority opinion, thereby losing for the defendant whatever influence a minority in favor of acquittal might have in the jury room. Secondly, such a charge may cause a jury to agree when they might otherwise never have come to agreement, thereby losing for the defendant whatever safeguard he might have had in a hung jury, a declaration of mistrial, and either a new trial or a subsequent decision by the prosecutor not to retry the case. Thirdly, and closely allied to the other two, the charge might move some jurors to forget the prosecution's heavy burden of proof and the defendant's fundamental presumption of innocence. Pugliano v. United States, 348 F.2d 902, 904 (1st Cir. 1965).

To mitigate these serious possibilities of prejudice, in United States v. Flannery, *supra*, we strongly advised trial courts to balance a supplementary charge so that (1) the onus of reexamination would not be on the minority alone, saying, "Whenever a court instructs jurors to reexamine their positions, it should expressly address its remarks to the majority as well as the minority." *Id.* 451 F.2d at 883; (2) a jury would not feel compelled to reach agreement, saying, "We expressly disapprove the *Tuey* statement that 'the case must at some time be decided.' 8 Cush. (62 Mass.) at 2. A jury, any number of juries, have a right to fail to agree." *Id.* at 883; and (3) jurors would be reminded of the burden of proof. *Id.* at 883.

Here, after the jury had expressed an inability to agree, the trial court twice instructed them to go back and try again. In the first supplementary instruction, the court also reminded the jury that the case was expensive to try, implying that they had best reach agreement and reach it soon. In the second supplementary instruction, the court commented that "We don't want to try this case but one time", directly implying that it would be reasonable for the jury to reach a decision on the evidence before them. In addition, the court opined that "This is not a very difficult case when you come right down to it, just a matter of fact", implying that there was little justification for the jurors not to be able to agree. Neither set of instructions and comments contained the three elements which, in *Flannery*, we urged should be included in such charges.

The government argues that the supplementary instructions were not coercive in form or in their effect upon the jury, noting first that the court did not directly instruct the minority to reexamine its position and, secondly, that the jury deliberated a full two hours after receiving the final supplementary instruction. In effect, the government would have us examine whether the charge, taken as a whole, was coercive, treating the omission of the three elements set out in *Flannery* as mere evidence of coercion which may be rebutted by circumstantial evidence of a lack of coercion.

---

1. Crabb, History of English Law 287 (1829); "[Jurors were kept] without meat, drink, fire, or candle, unless by permission of the judge, until they were all unanimously agreed", People v. Sheldon, 156 N.Y. 268, 50 N.E. 840, 842 (1898).

The only reason we have for not prohibiting the *Allen* charge altogether, as has been done in several other circuits,[2] is our feeling that there may be times when, for the sake of judicial economy, jurors need to be reminded that they should deliberate together in an atmosphere of mutual deference and respect. But any economies which may accrue at the trial level are likely to be lost at the appellate level if on-going review of supplementary instructions is invited by departing from approved formulations of the charge. Moreover, "[S]uch departures impose on appellate courts the almost impossible task of weighing the prejudicial impact" of variations in the approved charge. United States v. Flannery, *supra,* 451 F.2d at 883. The impact can never be assessed accurately, for the relevant events take place in the secrecy of the jury room, and never appear in the trial record. For us to become involved, at this point, in gauging the coerciveness of various *Allen*-type renditions would be to launch us on an unnecessary voyage in judicial review.

We have little doubt that the trial court had the best of intentions, and disapproved our approved formulation of the *Allen* charge out of uncertainty or confusion. It may have thought that the time of impasse, which would trigger an *Allen* charge, had not yet come. We think, however, that whenever a jury first informs the court that it is deadlocked, any supplemental instruction which urges the jury to return to its deliberations must include the three balancing elements stated above. While we specifically refrain from offering definite wording for the charge, "as graven in stone", United States v. Thomas, 146 U.S.App.D.C. 101, 449 F.2d 1177, 1188 (1971), we have illustrated in a footnote below an instruction consistent with this rule.[3]

Reversed; new trial ordered.

---

2. The *Allen* charge has been replaced by the "modified" charge recommended by the American Bar Association, Standards Relating to Trial by Jury § 5.4, 145–146 (1968), in three circuits. *See* United States v. Thomas, 146 U.S.App.D.C. 101, 449 F.2d 1177, 1187 (1971) ; United States v. Fioravanti, 412 F.2d 407, 420 (3d Cir. 1969), cert. denied, Panaccione v. United States, 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969) ; United States v. Brown, 411 F.2d 930 (7th Cir. 1969). Elsewhere, the *Allen* charge has been either modified to include "balancing" elements, *see* United States v. Bailey, 468 F.2d 652, 663 (5th Cir. 1972) ; Burrup v. United States, 371 F.2d 556, 557 (10th Cir. 1967), or given a strict formulation that may not be altered by the trial court, *see* United States v. Kenner, 354 F.2d 780, 782–784 (2d Cir. 1965) ; United States v. Sawyers, 423 F.2d 1335, 1340 (4th Cir. 1970) ; United States v. Harris, 391 F.2d 348, 355 (6th Cir. 1968) ; United States v. Pope, 415 F.2d 685, 691 (8th Cir. 1969) ; Sullivan v. United States, 414 F.2d 714 (9th Cir. 1969).

3. The following instruction, approved in large part by the ABA in its Standards Relating to Trial by Jury, Commentary to § 5.4(a), has been modified to include the three *Flannery* balancing elements, shown in italics :

"The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

"It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous, *even if your opinion is now in the majority.* But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict. *A jury has the right to fail to agree.*

"You are not partisans. You are judges —judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case. *The high burden of proof which must be sustained by the prosecution has not changed.*"