**UNITED STATES, Appellant,**

v.

**Daniel PANIAGUA–RAMOS,
Defendant—Appellee.**

**No. 97–1385.**

United States Court of Appeals,
First Circuit.

Heard Nov. 6, 1997.

Decided Feb. 3, 1998.

José A. Quiles–Espinosa, Senior Litigation Counsel, San Juan, PR, with whom Guillermo Gil, United States Attorney, Washington, DC, Edwin O. Vázquez, Assistant United States Attorney, Deputy Chief, Criminal Division, Hato Rey, PR, Desireé Laborde–Sanfiorenzo and Nelson Pérez–Sosa, Assistant United States Attorneys, San Juan, PR, were on brief, for appellant.

José R. Aguayo, Hato Rey, PR, with whom Joaquín Monserrate–Matienzo and Joaquín Monserrate–Peñagarícano were on brief for appellee.

Before TORRUELLA, Chief Judge, CYR, Circuit Judge, and DiCLERICO, Jr.,* District Judge.

DiCLERICO, District Judge.

After a conviction by a federal jury for conspiracy to possess with intent to distribute a controlled substance and an acquittal on a charge of aiding and abetting possession of a controlled substance, the defendant-appellee, Daniel Paniagua–Ramos, was granted a new trial by the trial judge on the ground that the district court's jury charge was prejudicial. On appeal, the government asserts that the district court abused its discretion by finding plain error in its charge and

granting a new trial. Because we find that the district court did not abuse its discretion in concluding that its charge was improper, we affirm.

### Factual and Procedural Background

This is an appeal from an order entered January 15, 1997, by the district court granting a new trial. The government prosecuted the appellee, Daniel Paniagua–Ramos, for conspiracy to possess 400 kilograms of cocaine with the intent to distribute it, and for aiding and abetting the possession of the cocaine in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 846.

The case was tried in district court from Tuesday, December 3, 1996, to Friday, December 6, 1996. On Friday, December 6, the jury retired to deliberate for three hours, after which they requested leave to continue on Monday, December 9. On Monday morning they began deliberating at approximately 9:30 a.m., but at 10:30 a.m. they forwarded a note to the court stating: "We have not reached an unanimous decision, and will not be changed." The court instructed the jury to continue trying to decide. After lunch, they continued deliberations. The jury sent another note to the court at 4:16 p.m. stating: "We still don't have a unanimous verdict, and none wants to change its decision." At 4:33 p.m. the jury sent yet another note to the court, stating: "We suggest to retire our position as a juror for the case of Mr. Daniel Paniagua. Due to no unanimous verdict between all jurors." The court then gave the jury a charge based in part on the modified Allen[1] charge found in a draft of proposed criminal law pattern jury instructions under consideration for use as an aid to the district courts of the First Circuit.[2] The court instructed the jury as follows:

I am going to instruct you to go back and resume your deliberations. I will explain why and give you further instructions.

In trials absolute certainty can be neither expected nor attained. You should consider that you are selected in the same manner and from the same source as any future jury would be selected. There is no reason to suppose that this case would ever be submitted to 12 men and women more intelligent, more impartial or more competent to decide it than you, or that more or clearer evidence would be produced in the fu-

---

* Of the District of New Hampshire, sitting by designation.

1. *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

2. The draft pattern instruction from which the court derived its *Allen* charge, titled *Pattern Criminal Jury Instructions for the District Courts of the First Circuit*, "Charge to a Hung Jury" Part 6.06, provides as follows:

Members of the jury, I have seen your two notes but I want you to listen carefully to what I have to say and, of course, this is an additional instruction. I want all of you to pay careful attention to this instruction that I am going to give you.

In trials, such as this one that you participated in, absolute certainty can neither be expected nor attained. And that happens, I would say, in the majority of the trials. You should consider that you are selected or you were selected in this case in the same manner and from the same source as any future jury will be selected. In other words, the fact that you have not agreed doesn't mean that this is the end of the case. The case will have to be tried again if you cannot agree. The point I am making is this: There is no reason to suppose that this case would be ever [sic] submitted to 12 jurors different from you

people who are either more intelligent or more capable or more impartial or more competent than the 12 of you. And they are going to hear the same evidence that you have heard.

The point that I am trying to make is that you, the 12 of you, have to make a conscious effort to try to decide this case if you can do so without doing violence to your individual judgment.

I know by experience in dealing with collective decisions, because I have sat, for example, on the Court of Appeals many times and then it is three judges deciding, that the three judges or the many judges may have different views on something. But when you have different views you have to look calmly at the issues and calmly assess them to see whether there is any way of bringing about a solution.

ture. Thus, it is your duty to decide the case if you can conscientiously do so without violence to your individual judgment.

The verdict to which a juror agrees must, of course, be his or her own verdict, the result of his or her own convictions, and not a mere acquiescence in the conclusion of his or her fellow jurors. Yet, in order to bring 12 minds to a unanimous result, you must examine the questions submitted to you with an open mind and with proper regard for, and deference to, the opinion of your fellow jurors.

In conferring together you ought to pay proper respect to each other's opinions and you ought to listen with a mind open to being convinced by each other's arguments. Thus, where there is disagreement, jurors favoring acquittal should consider whether a doubt in their own mind is a reasonable one when it makes no impression upon the minds of the other equally honest and intelligent jurors who have heard the same evidence with the same degree of attention and with the same desire to arrive at the truth under the sanction of the same oath.

On the other hand, jurors favoring conviction ought seriously to ask themselves whether they should not distrust the weight or sufficiency of evidence which fails to dispel reasonable doubt in the minds of their fellow jurors.

Not only should jurors in the minority re-examine their positions, but jurors in the majority should do so also, to see whether they have given careful consideration and sufficient weight to the evidence that has favorably impressed the persons in disagreement with them.

Burden of proof is a legal tool for helping you decide. The law imposes upon the prosecution a high burden of proof. The prosecution has the burden to establish, with respect to each count, each essential element of the offense, and to

establish that essential element beyond a reasonable doubt. And if with respect to any element of any count you are left in reasonable doubt, the defendant is entitled to the benefit of such doubt and must be acquitted.

It is your duty to decide the case, if you can conscientiously do so without violence to your individual judgment. It is also your duty to return a verdict on any counts as to which all of you agree, even if you cannot agree on all counts. But if you cannot agree, it is your right to fail to agree.

I now instruct you to go back and resume your deliberations.

Pattern Criminal Jury Instructions Drafting Committee, *Pattern Criminal Jury Instructions for the District Courts of the First Circuit*, "Charge to a Hung Jury," Part 6.06 (discussion draft later adopted without significant revision).

This charge was contained in a discussion draft prepared by the Pattern Criminal Jury Instructions Drafting Committee. At the First Circuit Judicial Conference held on October 1, 1997, the federal judges present voted to approve publication of the final version of the pattern instructions with the following caveat appearing in the Preface:

Although we believe that the pattern instructions and, in particular, the commentary that accompanies them will be helpful in crafting a jury charge in a particular case, it bears emphasis that no district judge is required to use the pattern instructions, and that the Court of Appeals has not in any way approved the use of a particular instruction.

Pattern Criminal Jury Instructions Drafting Committee, *Pattern Criminal Jury Instructions for the District Courts of the First Circuit*, Preface (visited Dec. 17, 1997) <http://www.med.circ1.dcn/crpji/crpjitext.htm>.

You have to pay respect to each other's opinions. You have to listen with a mind open to be convinced of other people's arguments. Thus, where there is disagreement, jurors that are presently favoring acquittal should consider whether a doubt in their own mind is a reasonable one when it makes no impression upon the minds of the other equally honest and intelligent jurors who have heard the same evidence with the same degree of attention and with the same desire to arrive at the truth under the sanction of the same oath.

On the other hand, jurors favoring conviction ought to seriously ask themselves whether they should not distrust the weight or sufficiency of the evidence which fails to dispel reasonable doubt in the minds of their fellow jurors.

Not only should jurors in the minority re-examine their positions, but jurors in the majority should also do so to see whether they have given careful consideration and sufficient weight to the evidence that has favorably impressed the persons in disagreement with them.

Remember that I gave you a charge on Friday and I gave you this morning the charge for you to have in writing. The burden of proof instruction is a legal tool that will help you to decide this case.

The law imposes upon the prosecution a high burden of proof. The prosecution has the burden to establish with respect to each count each essential element of the offense and to establish that essential element beyond a reasonable doubt. And with respect to any element of any count that you are left in reasonable doubt, then the defendant is entitled to the benefit of such doubt and must be acquitted.

It is your duty to decide the case if you can do so without doing violence to your individual judgment. But remember, as I said before, that your indecision is not going to be the end of this. Because in the

long run I have to take your indecisive verdict, that is no verdict, and I will have to simply try this case again, as I said, and get 12 jurors that may be worse equipped, they are going to hear the same evidence, and they are going to go through the same exercise.

So the point that I am trying to make is that if you put all of your 12 minds to work and all of you make an honest effort not to fight with each other, for example, but to honestly listen to each other, I am pretty sure that you will be able to agree on a verdict.

Remember something that I said before, and if I did not, I think I did say it in the preliminary instructions that I gave you, you are not parties to this case. You do not work for the government. You are not related to the defendant. You are strangers to this controversy the same way that I am. Our mission is to try to resolve this case, to decide this case on the basis of the instructions and on the basis of the applicable law. That is what the system requires. That is the only system that we have.

So with that in mind, I am going to beg you to go back and give it a try because I am pretty sure that you can.

No objections to the charge were made after the charge was given and before the jury retired to deliberate. *See* Fed. R.Crim.P. 30.[3] No copies of the pattern charge were provided to counsel at the time the charge was given to the jury. Immediately after instructing the jury, the court informed counsel that the charge given was the proposed pattern charge. At approximately 6:40 p.m. the jury returned a verdict finding the defendant guilty on the conspiracy charge and not guilty on the substantive charge of aiding and abetting.

On December 13, 1996, the defendant received a copy of the proposed pattern jury

---

**3.** Fed.R.Crim.P. 30 states in relevant part:
  No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection.

Pursuant to Fed.R.Crim.P. 30, a party waives an objection to a jury instruction if the party fails to enter the objection into the record after the judge has instructed the jury but before the jury retires to deliberate. *See Kerr–Selgas v. American Airlines, Inc.,* 69 F.3d 1205, 1212–13 (1st Cir.1995).

instruction pursuant to his request. On December 16, 1996, after contrasting the proposed pattern instruction with the instruction as given by the district court, the defendant filed a timely request for a new trial. *See* Fed.R.Crim.P. 33. The defendant argued that the court's *Allen* charge was defective and coerced the jury into reaching a verdict. Since the defendant failed to object to the charge before the jury retired to deliberate, the district court reviewed the charge for plain error. The court rejected the government's arguments opposing a new trial and ordered a new trial. The government appeals this decision, arguing that the court abused its discretion in ordering a new trial on the basis that the *Allen* charge constituted plain error.

### *Discussion*

It is within the discretion of the district court to set aside a jury verdict and order a new trial, but this remedy must be "sparingly used, and then only where there would be a miscarriage of justice." *United States v. Indelicato,* 611 F.2d 376, 387 (1st Cir.1979) (quotations omitted). "[A]n appellate court must sustain the granting of a new trial unless there was an abuse of discretion." *Borras v. Sea–Land Service, Inc.,* 586 F.2d 881, 887 (1st Cir.1978). A review for abuse of discretion is deferential to the district court, as the court was present at the trial and had the opportunity first hand to observe the evidence, the witnesses, and the jury. However, there are several components to the abuse of discretion standard. *See United States v. Castro,* 129 F.3d 226, 228–29 (1st Cir.1997). While a court of appeals need not defer to the district court in reviewing questions of law, *see Koon v. United States,* 518 U.S. 81, 98–100, 116 S.Ct. 2035, 2047, 135 L.Ed.2d 392 (1996), findings of fact are often subjected to clear error review, *see Castro,* 129 F.3d 226, 228–29.

Because the defendants in this case failed to object to the *Allen* charge in a timely fashion, a reviewing court may not take notice of the error unless the error

meets the requirements of Fed.R.Crim.P. 52(b).[4] In *United States v. Olano,* the Supreme Court articulated the proper analysis to be employed in reviewing for plain error. *See* 507 U.S. 725, 731–37, 113 S.Ct. 1770, 1776–80, 123 L.Ed.2d 508 (1993). First, an error must have been committed. *See id.* at 732–33, 113 S.Ct. at 1776–77. Second, the error must be "plain," which has been interpreted as "obvious" or "clear under current law." *Id.* at 734, 113 S.Ct. at 1777–78. Third, the error must affect substantial rights. *See id.* at 734–35, 113 S.Ct. at 1777–78. Finally, once these three elements are satisfied, the court may in its discretion take notice of the plain error if it is appropriate to do so. *See id.* at 735–37, 113 S.Ct. at 1778–80. We will address these elements *seriatim.*

### A. The Error

In the past, we have referred to the *Allen* charge as the "dynamite charge" and noted that it should be used with "great caution, and only when absolutely necessary." *United States v. Flannery,* 451 F.2d 880, 883 (1st Cir.1971). A defendant may be prejudiced by an *Allen* charge in a number of ways. *See United States v. Angiulo,* 485 F.2d 37, 39 (1st Cir.1973). Therefore, we have instructed district courts to include three elements in the substance of an *Allen* charge to ameliorate its potentially prejudicial effect. *See United States v. Manning,* 79 F.3d 212, 222 (1st Cir.1996). "A district court should instruct jurors in substance that (1) members of both the majority and the minority should reexamine their positions, (2) a jury has the right to fail to agree, and (3) the burden of proving guilt beyond a reasonable doubt remains with the government." *Id.* We have further instructed trial courts to avoid substantive departures from approved formulations of the *Allen* charge, and to avoid using language that might heighten its coercive effect. *See Angiulo,* 485 F.2d at 39. In situations where the substance of these elements was not communicated to the jury, this court has found reversible error without

---

4. Fed.R.Crim.P. 52(b) provides:

Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

further inquiry. *See Angiulo*, 485 F.2d at 39–40. At issue in this case is the second element.

The trial court stated that agreement should not come at the cost of doing violence to a juror's independent judgment, and that an indecisive verdict will require a new trial. While the court determined that it had failed to include in its *Allen* charge the substance of the jury's right to fail to agree, it indicated that implicit in the charge given was the jury's right to fail to agree. This court has refrained from offering definite wording for an *Allen* charge, and in *Vachon* we held that a court's failure to include the specific language "a jury has the right to disagree" did not necessitate a new trial. *See United States v. Vachon*, 869 F.2d 653, 659 (1st Cir.1989).

However, the case at hand is readily distinguished from *Vachon*. Here, the language the court used to communicate the jury's right to fail to agree was insufficient when considered in the coercive context in which it was given, i.e., the jury had already informed the court on three occasions that it could not reach a unanimous verdict. Moreover, any force behind the implicitly communicated right to fail to agree was negated by the court's other statements in which it was embedded. The court summarized the "point" of the *Allen* charge given by stating "if you put all of your 12 minds to work and all of you make an honest effort not to fight with each other, for example, but to honestly listen to each other, I am pretty sure that you will be able to agree on a verdict." This statement inevitably created an atmosphere of coercion that minimized the significance of the positions held by the individual jurors and in effect compelled unanimity. Referring to a juror's attempts to maintain his or her individual judgment as a "fight" undermined the admonition that jurors should not do violence to their individual judgment. The coercive nature of this language was enhanced by the court's statement that the "mission" was to "try to resolve this case, to decide this case. . . . That is what the system requires. That is the only system that we have. . . . I am going to beg you to go back and give it a try because I am pretty

sure that you can." These statements infer that it would be reasonable, perhaps even expected, for the jurors to come to a decision on the evidence submitted, and that our system of justice required and depended on their arriving at such a decision. Finally, the aura of compulsion was intensified by the court's implicit dissatisfaction with an indecisive verdict. The court emphasized that the jury's indecision "is no verdict" and "is not going to be the end of this" and that "in the long run" "I will have to simply try this case again."

These statements in the context in which they appear run counter to our instruction that "in all events, the court should be careful to . . . avoid language which might heighten" the coercive effect of an *Allen* charge. *Angiulo*, 485 F.2d at 39. This court has expressly disapproved of statements that "directly imply[ ] that it would be reasonable for the jury to reach a decision on the evidence before them." *Id.* (disapproving court's statements to jury (1) about expense of trial, (2) that court did not want to try case again, and (3) that case was not very difficult); *see also Flannery*, 451 F.2d at 883 (disapproving court's statement "the case must at some time be decided.")

Moreover, because the jury's weakly enunciated right to deliver an indecisive verdict was closely intertwined with language that strongly compelled a jury agreement, the charge failed to communicate adequately the substance of the jury's right to fail to agree. We therefore find that the lower court's determination that its instruction was legally insufficient was correct under the circumstances.

The government fails in its attempt to characterize the trial court's order for a new trial as being premised solely upon the court's failure to state expressly that the jury had a "right to fail to agree." The trial court's order focused on the First Circuit's requirement that "the *substance* of the jury's right" be communicated. The court found that it had "failed to communicate the notion that the jury has a 'right' to deliver an inconclusive verdict," and that the charge lacked "complete accuracy in communicating the extent of the jury's obligations and

rights." Second, given the facts of this case, we disagree with the government's contention that the defendant's failure to object in a timely manner indicates the charge was not in error. The parties were not provided with a copy of the draft pattern charge. Immediately after the jury was excused, the court said to the parties "[b]efore you say anything, let me say this ..." and informed the parties that the instruction given was a proposed pattern *Allen* charge that the First Circuit was considering for publication. We agree with the district court that the failure of the parties to object was understandable in these circumstances.

### B. The Clarity of the Error

The second requirement of Rule 52(b) is that the error be plain or clear. Here, the court's error in its instruction constituted clear error under current law. We established as early as 1973 that the failure to instruct the jury on the substance of the three elements was reversible error, without further inquiry as to the coerciveness of the charge. *See Angiulo*, 485 F.2d at 39–40. The error committed by the trial court is therefore "plain error" under Rule 52(b).

### C. Substantial Rights Affected

Finally, we must address the third requirement of Rule 52(b), whether the plain error affected substantial rights. In most instances, this requires that the error be prejudicial. *See Olano*, 507 U.S. at 734–35, 113 S.Ct. at 1777–78. Here, the jury sent three notes to the court over a six hour period indicating that the jury was deadlocked, and ultimately suggested that the jury be allowed to "retire." A reasonable inference is that the jurors were divided and deeply entrenched in their opinions. The court then instructed the jury with the *Allen* charge at issue, using language that we have found to be coercive in the context in which it was given. The jury returned its verdict approximately an hour and forty minutes later. Its verdict was split. It acquitted the defendant of the substantive charge, but convicted the defendant of the conspiracy charge. The district court found it likely that the modified *Allen* charge "intimated [the jury] into a decision" and

"tainted this jury's deliberation." The trial court's findings on the prejudicial effect of the *Allen* are entitled to deference, and we find them to be reasonable under the circumstances.

The government argues, however, that the verdict was free from undue influence, and that the charge did not have a prejudicial effect on the defendant. It asserts that the verdict was not inconsistent, and that the court erred when it considered the inconsistency of the verdict as evidence of coercion. Although an inconsistent verdict in itself is not grounds to vacate a conviction, *see Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932), an inconsistent verdict can be probative of whether a jury was confused or coerced into rendering a compromise verdict, *see United States v. Washington*, 127 F.3d 510, 513–14 (6th Cir. 1997) (considering alleged inconsistent verdict as evidence of jury confusion); *Hafner v. Brown*, 983 F.2d 570, 575 (4th Cir.1992) ("If the district judge concludes that an inconsistent verdict reflects jury confusion or uncertainty, he or she has the duty to clarify the law governing the case and resubmit the verdict for a jury decision.") Furthermore, we do not disagree with the district court that "given the nature of the evidence in this case, the logical verdicts would have been that [the defendant] was guilty of both the substantive charge and the conspiracy charge or that he was innocent of both charges." To bolster its contentions, the government again argues that neither party objected to the charge, an issue we have already addressed *supra*, and need not revisit. Finally, the government urges that the polling of the jurors failed to indicate any coercion. Polling is useful to indicate an irregularity in a verdict. *See Siverson v. O'Leary*, 764 F.2d 1208, 1219–20 (7th Cir.1985). However, the failure of a poll to indicate coercion is not conclusive as to whether coercion actually existed. *See Manning*, 79 F.3d at 223 (in open court, after jury had reached verdict, asking "juror to admit before his fellow jurors that he had voted against his will was asking too much.").

*D. Miscarriage of Justice*

█ We find that the three elements required by Rule 52(b) are therefore satisfied in this case. However, Rule 52(b) is discretionary. Even when plain error is found that affects substantial rights, a reviewing court must determine whether the error " 'seriously affect[s] the fairness, integrity or public reputation of the judicial proceedings' " before exercise of its discretion is appropriate. *Olano,* 507 U.S. at 736, 113 S.Ct. at 1779 (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)); *see Johnson v. United States,* ―― U.S. ――, ――, 117 S.Ct. 1544, 1550, 137 L.Ed.2d 718 (1997). Under this standard, a reviewing court should exercise its discretion when failure to take notice of the error would result in a miscarriage of justice. *See Olano,* 507 U.S. at 736, 113 S.Ct. at 1778–79.

Here, the government's case relied upon the testimony of a cooperating witness. The trial court found the credibility of this witness to be "substantially compromised by impeachment through cross examination and by the testimony of a probation officer." The court determined that it was likely this led to the "severe deadlock broken only by the *Allen* charge" which "intimidated [the jury] into a decision." This court forewarned against this precise situation in *Angiulo* when we expressed our concern that an *Allen* charge may prejudice a defendant by depriving the defendant of "whatever safeguard he might have had in a hung jury [or] a declaration of mistrial." 485 F.2d at 39. In this case the jury verdict may be attributed at least in part to coercion by the court. We agree with the district court's implicit determination that a failure to order a new trial would result in a miscarriage of justice. We find no abuse of discretion.

*Affirmed.*