USCA1 Opinion

 
 <!--
 @import url(/css/dflt_styles.css);
 -->
 
 


 
 
 
 United States Court of Appeals
 
 For the First Circuit
 
 
 
 
 
 
 No. 98-1643
 
 
 UNITED STATES OF AMERICA,
 
 
 Plaintiff, Appellee,
 
 
 v.
 
 
 RAYMOND HERNANDEZ-ALBINO,
 
 
 Defendant, Appellant.
 
 
 
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT
 
 
 FOR THE DISTRICT OF PUERTO RICO
 
 
 [Hon. Hector M. Laffitte, U.S. District Judge]
 
 
 
 
 Before
 
 
 Torruella, Chief Judge,
 
 Coffin, Senior Circuit Judge,
 
 and Selya, Circuit Judge.
 
 
 
 
 
 Peter Goldberger with whom Pamela A. Wilk was on brief for
 
 appellant.
 
 Camille Velez-Rive, Assistant United States Attorney, with
 
 whom Guillermo Gil, United States Attorney, Jorge E. Vega-Pacheco,
 
 Assistant United States Attorney, and John Teakell, Assistant
 
 United States Attorney, were on brief for appellee.
 
 
 
 
 
 
 May 20, 1999
 
 
 
 
 
 
 
  COFFIN, Senior Circuit Judge. The government arrested
 
 defendant-appellant Raymond Hern ndez Albino ("Hern ndez") and
 
 several other men in a drug sting in Arecibo, Puerto Rico. 
 
 Hern ndez was indicted, tried, convicted and sentenced. On appeal,
 
 he argues that the court made a series of mistakes both during
 
 trial and at sentencing. We are unpersuaded by his claims of error
 
 and affirm.
 
 I. Background
 
 Testimony at trial revealed the following: On April 17,
 
 1997, two government informants contacted Armando Cabrera Vargas
 
 ("Cabrera") regarding the sale of a number of kilograms of cocaine. 
 
 Cabrera, in turn, went to see Orlando Ramirez Ortiz ("Ramirez"),
 
 and introduced Ramirez to the government informants. With Cabrera
 
 acting as middleman, the parties agreed that Ramirez would purchase
 
 seven kilograms of cocaine for $123,500.
 
 Ramirez's problem was that he did not actually have that
 
 much money, so he approached his long-time friend Hern ndez for a
 
 loan for Ramirez's "business." When Hern ndez asked for more
 
 details, Ramirez offered vague assurances that he was sure of what
 
 he was doing and that the money would be repaid. Although
 
 Hern ndez was reluctant to lend this sizeable amount of capital
 
 without knowing the specifics of the business deal, he agreed to
 
 the transaction after Ramirez pledged his house and business as
 
 collateral. On April 23, 1997, the day the drug deal was to take
 
 place, Ramirez finally informed Hern ndez that the money was being
 
 used to purchase cocaine. When pressed at trial by prosecutors,
 
 Ramirez conceded that Hern ndez, still unsure about whether the
 
 transaction would be consummated, demanded to be present and carry
 
 the money.
 
 When the time came, Ramirez called Hern ndez and told him
 
 to come to the back of the Villa Real Hotel, where the exchange was
 
 to take place. When Hern ndez arrived in his Toyota 4Runner truck,
 
 Ramirez got in and inspected the money, which was in a sports gear
 
 bag. At that moment, one of the informants selling the drugs
 
 called Ramirez on his cellular phone and instructed Ramirez to
 
 drive to the front of the hotel. In front of the hotel the
 
 informant approached Hern ndez's truck, and told Hern ndez and
 
 Ramirez that "the Colombian" drug supplier (in reality an
 
 undercover government agent named Rol¢n) wanted to come check out
 
 the money. When Hern ndez inquired, Ramirez explained that Rol¢n
 
 owned the cocaine. Rol¢n inspected the money and departed
 
 allegedly to retrieve the drugs. Instead, he gave other agents the
 
 signal to arrest Hern ndez and Ramirez.
 
 When Hern ndez was arrested, agents discovered in his
 
 waistband a concealed 9 millimeter handgun, which he had a valid
 
 permit to carry. The agents did not thoroughly search the vehicle
 
 at the scene but during a later inventory search found a different
 
 9 millimeter gun with an obliterated serial number under the front
 
 passenger seat where Ramirez had been sitting.
 
 Hernandez was indicted on three counts: 1) conspiracy to
 
 possess the seven kilograms of cocaine with the intent to
 
 distribute; 2) carrying a firearm during and in relation to the
 
 drug crime; and 3) possessing the gun with the obliterated serial
 
 number. Hernandez pled not guilty to all three charges.
 
 Ramirez and Cabrera were also indicted, but both pled
 
 guilty and agreed to cooperate with the government in return for
 
 the government's promise to recommend leniency in sentencing. 
 
 During a three day trial in mid-November 1997, the government
 
 called Ramirez as a witness. While Ramirez was on the stand, the
 
 court found him at times reluctant to testify and unresponsive to
 
 the government's questions, so it permitted the prosecutors to ask
 
 certain leading questions.
 
 The case was eventually sent to the jury, and it began
 
 deliberating. Approximately two and one half hours later, the jury
 
 sent a note to the judge saying that "[t]he jury has not been able
 
 to come to a guilty or not guilty verdict. We are at an impasse." 
 
 The judge consulted with counsel, and sent the following response,
 
 to which counsel did not object:
 
 All of you are equally honest and
 
 conscientious jurors who have heard the same
 
 evidence. All of you share an equal desire to
 
 arrive at a verdict. Each of you should ask
 
 yourself whether you should question the
 
 correctness of your present position. I
 
 remind you that in your deliberations you are
 
 to consider the instructions as a whole. 
 
 Please continue the deliberations.
 
 
 After deliberating for another hour, the jury found Hern ndez
 
 guilty of both count 1, conspiracy to possess cocaine with the
 
 intent to distribute, and count 2, possession of a gun during and
 
 in relation to a drug crime, but acquitted him on count 3,
 
 possession of the gun found under Ramirez's seat.
 
 Hern ndez was subsequently sentenced to 181 months of
 
 imprisonment to be followed by five years of supervised release,
 
 and a special assessment of $200. This appeal ensued.
 
 II. Discussion
 
 Hern ndez argues that his conviction and sentence were
 
 improper due to a number of alleged errors. While none of his
 
 claims is meritorious, three are worthy of developed consideration.
 
 A. The court's supplemental charge
 
 Hern ndez claims that the court erred when it responded
 
 to the jury's impasse with the supplemental jury instruction, often
 
 described as a "dynamite" charge or an Allen charge, after Allen v.
 
 United States, 164 U.S. 492 (1896). Counsel did not object at the
 
 time, and hence we review only for plain error. See Fed. R. Crim.
 
 P. 52(b); United States v. Bradstreet, 135 F.3d 46, 50 (1st Cir.
 
 1998).
 
 Plain error analysis requires four steps. First, an
 
 error must have been committed. United States v. Olano, 507 U.S.
 
 725, 732-33 (1993). Second, the error must be plain or obvious. 
 
 Id. at 734. Third, the plain error must "affect[] substantial
 
 rights," Fed. R. Crim. P. 52(b), which generally means that it must
 
 have been prejudicial, see Olano, 507 U.S. at 734. Finally,
 
 because Rule 52(b) is discretionary, we must be convinced that the
 
 error "'seriously affect[s] the fairness, integrity or public
 
 reputation of judicial proceedings[]'" before we will order a new
 
 trial. Id. at 736 (quoting United States v. Atkinson, 297 U.S.
 
 157, 160 (1936)).
 
 i. The Error. Any supplemental instruction in response
 
 to a jury's deadlock can have a significant coercive effect by
 
 intimating that some jury members should capitulate to others'
 
 views, or by suggesting that the members should compromise their
 
 rational positions in order to reach an agreement. See United
 
 States v. Angiulo, 485 F.2d 37, 39 (1st Cir. 1973). Although
 
 federal courts have long sanctioned the use of supplemental charges
 
 in the face of an apparent impasse, see Lowenfield v. Phelps, 484
 
 U.S. 231, 237 (1988), we have warned that such action should be
 
 undertaken with "great caution and only when absolutely necessary,"
 
 United States v. Flannery, 451 F.2d 880, 883 (1st Cir. 1971). 
 
 Concerned about the instruction's potentially coercive
 
 effect, we have required that it contain three specific elements to
 
 moderate any prejudice. See United States v. Paniagua-Ramos, 135
 
 F.3d 193, 197 (1st Cir. 1998). First, in order that the burden of
 
 reconsideration is not shouldered exclusively by those jury members
 
 holding the minority view, the court should expressly instruct both
 
 the minority and the majority to reexamine their positions. See
 
 Angiulo, 485 F.2d at 39. Second, the instruction should
 
 acknowledge that the jury has the right not to agree. See Jenkins
 
 v. United States, 380 U.S. 445, 446 (1965) (per curiam). Third,
 
 the court should remind the jury that the burden of proving guilt
 
 beyond a reasonable doubt remains, as always, with the government. 
 
 See Paniagua-Ramos, 135 F.3d at 197.
 
 The charge at issue did not meet these criteria. While
 
 it could be argued that the first element was satisfied because
 
 each person was instructed to question the correctness of his or
 
 her position, the instruction did not address either of the other
 
 two requirements in any manner whatsoever. Although we have
 
 consistently refrained from offering any definite wording for an
 
 Allen charge, the instruction should have referenced in some way
 
 all three essential elements. The court's failure to do so was
 
 error.
 
 The government presents a somewhat tautological argument
 
 in response. It claims that the omission of two elements was not
 
 erroneous because the instruction was not an Allen charge, and it
 
 was not an Allen charge because it did not follow the accepted
 
 format, i.e., it did not contain all three elements. In addition
 
 to protecting any supplemental instruction such as this one from
 
 judicial review for consistency with the three Allen criteria, the
 
 government's argument ignores our explicit ruling that "any
 
 supplemental instruction which urges the jury to return to its
 
 deliberations must include the three balancing elements stated
 
 above." Angiulo, 485 F.2d at 40 (emphasis added).
 
 ii. The Clarity of the Error. It is equally obvious that
 
 the second requirement, i.e., that the error is clear, has also
 
 been met. We first discussed the three elements in Flannery in
 
 1971, and have followed them with unwavering devotion ever since. 
 
 We have addressed them on a number of occasions, even describing
 
 them as "essential," United States v. Vachon, 869 F.2d 653, 659
 
 (1st Cir. 1989). The district court's failure to mention either of
 
 the last two elements constituted plain error.
 
 iii. Affecting substantial rights. Although the error
 
 was plain, we may not reverse Hern ndez's conviction and order a
 
 new trial unless the error "affect[ed] substantial rights." Fed.
 
 R. Crim. P. 52(b). In a challenge to an improper Allen charge, the
 
 relevant inquiry revolves around whether the charge "in its context
 
 and under all the circumstances" coerced the jury into convicting
 
 him. Lowenfield, 484 U.S. at 237. Hern ndez's counsel below
 
 admitted that the charge was "not coercive in the least." We
 
 agree, based on both the length of deliberations after the Allen
 
 charge and the verdict's internal consistency. See United States
 
 v. Plunk, 153 F.3d 1011, 1027 (9th Cir. 1998); Paniagua-Ramos, 135
 
 F.3d at 199.
 
 The length of deliberations in this case negates any
 
 suggestion of coercion. The jury's task was relatively
 
 straightforward. The government claimed Hern ndez joined Cabrera's
 
 and Ramirez's drug conspiracy because Hern ndez lent Ramirez the
 
 money after learning that it would be used to purchase drugs. 
 
 Hern ndez's defense was that he was "merely present" when the drug
 
 deal occurred. Deciding which version of events to believe was a
 
 relatively uncomplicated exercise. It appears that the jury
 
 recognized as much and seemed to expect that deliberations would be
 
 swift: they complained of an impasse after deliberating for only
 
 two and one half hours. After the judge sent the written
 
 supplemental instruction, the jury deliberated for another hour. 
 
 Numerous courts have found no coercion under similar
 
 circumstances. See Green v. French, 143 F.3d 865, 886 (4th Cir.
 
 1998) (concluding that a one hour deliberation after a supplemental
 
 Allen instruction failed to suggest coercion); United States v.
 
 Hernandez, 105 F.3d 1330, 1334 (9th Cir. 1997) (stating that
 
 deliberations of 40 minutes after Allen charge did not "raise the
 
 specter of coercion"); United States v. Smith, 635 F.2d 716, 721-22
 
 (8th Cir. 1980) (finding no coercion when jury deliberated forty-
 
 five minutes after Allen charge, in addition to previous three hour
 
 total deliberations). We note, however, that these cases do not
 
 establish a formula, but rather are illustrative of the principle
 
 that sufficient additional time can help to establish an absence of
 
 coercion. That principle is particularly applicable in this case,
 
 where the total time of deliberation was roughly 3« hours, of which
 
 the deliberations after the Allen charge represented almost one
 
 third.
 
 The other relevant circumstance in this case, namely, the
 
 verdict's internal consistency, also implies an absence of
 
 coercion. As noted earlier, Hern ndez was convicted of conspiring
 
 to possess cocaine with the intent to distribute. He was also
 
 convicted of possession of a gun, either the one on his person or
 
 the one under Ramirez's seat, during and in relation to the drug
 
 crime. Finally, he was acquitted of possessing the gun with an
 
 obliterated serial number which was found underneath Ramirez's
 
 seat. The jury's verdict indicates that it found Hern ndez guilty
 
 of the drug crime and of possession of his own gun, but rejected
 
 the government's argument that he constructively possessed the
 
 firearm under Ramirez's seat. The internal consistency of this
 
 result suggests a nuanced analysis and reasoned decision. See
 
 Plunk, 153 F.3d at 1027 (concluding that "the fact that the jury
 
 rendered a mixed verdict [on independent counts] . . . suggests
 
 that it reviewed the evidence rationally and independently"); cf.
 
 Paniagua-Ramos, 135 F.3d at 199 (finding confusion when jury
 
 convicted defendant of conspiracy but acquitted him on the
 
 underlying substantive charge, because evidence suggested defendant
 
 was either innocent of both or guilty of both). 
 
 Because the jury was not coerced, the court's error did
 
 not affect Hern ndez's substantial rights, and we will not reverse
 
 his conviction due to the erroneous Allen charge.
 
 B. Carrying a gun "during and in relation to" a drug crime
 
 Hern ndez challenges two related aspects of the jury
 
 instructions on count two, namely, the failure to give a specific
 
 unanimity charge on which gun was carried, and the omission of the
 
 words "knowing" and "in relation to" from certain portions of the
 
 instructions.
 
 i. Unanimity on which gun was carried. Hern ndez claims
 
 that the court committed plain error because the jury was not
 
 instructed that it had to agree which gun Hern ndez carried before
 
 he could be convicted. Raised for the first time on appeal, this
 
 claim is also reviewed for plain error.
 
 In this case no error was committed. The court was not
 
 required to give a specific unanimity instruction because the jury,
 
 in fact, was not required to agree on the specific gun carried. 
 
 Although Federal Rule of Criminal Procedure 31(a) requires that a
 
 criminal conviction be unanimous, the jury need not necessarily
 
 agree on the facts underlying that conviction. See United States
 
 v. Tarvers, 833 F.2d 1068, 1074 (1st Cir. 1987) (unanimity
 
 generally not required with respect to a specific act underlying an
 
 element of a charged offense). When the government alleges in a
 
 single count that the defendant committed the offense by one or
 
 more specified means, the Supreme Court has "never suggested that
 
 in returning general verdicts in such cases the jurors should be
 
 required to agree on a single means of commission, any more than
 
 the indictments were required to specify one alone." Schad v.
 
 Arizona, 501 U.S. 624, 631 (1991); see also United States v.
 
 Reeder, 170 F.3d 93, 105 (1st Cir. 1999) (noting that the jury must
 
 agree that the government has proven all the elements of an offense
 
 beyond a reasonable doubt, but "it need not agree on the means by
 
 which all the elements were accomplished").
 
 Although unanimity is required when such a determination
 
 matters for sentencing purposes, see United States v. Melvin, 27
 
 F.3d 710, 715 (1st Cir. 1994) (finding enhanced mandatory sentence
 
 resulting from one particular firearm not supportable when the jury
 
 might have concluded that defendant possessed a different firearm
 
 not subject to the enhancement), the jury need not reach unanimous
 
 agreement on the identity of the weapon when the defendant is
 
 charged with violating  924(c) due to possession of more than one
 
 firearm and none of the weapons justifies more than the statutory
 
 minimum sentence. See United States v. Correa-Ventura, 6 F.3d
 
 1070, 1075-87 (5th Cir. 1993) (concluding that specific unanimity
 
 was not required when  924(c) conviction could have been based on
 
 any one of ten weapons seized).
 
 ii. Omission of "knowing" and "in relation to" during
 
 instructions. Next, Hern ndez argues that the court committed
 
 plain error by omitting both "knowing" and "in relation to" from
 
 the instructions. He argues that his licensed pistol had no
 
 relationship to the drug offense and that he did not knowingly
 
 carry the weapon found under Ramirez's seat. Consequently, the
 
 instructions allowed the jury to convict him either for his routine
 
 possession of a concealed weapon as authorized by his permit or
 
 without knowing the gun was under Ramirez's seat.
 
 The court instructed the jury as follows:
 
 Now, Count Two of the indictment charges the
 
 defendant with carrying a pistol or firearm
 
 during and in relation to a drug trafficking
 
 transaction. 
 
 . . . 
 
 Now, two essential elements are required to be
 
 proved beyond a reasonable doubt in order to
 
 establish the offense charged in Count Two of
 
 the indictment. And these are as follows:
 
 First, that the defendant committed a drug
 
 trafficking crime for which he may be
 
 prosecuted in a court of the United States. 
 
 And second, that during the commission of that
 
 crime, the defendant carried a firearm.
 
 
 The fact that a person may have a permit to
 
 carry a weapon is irrelevant in this matter. 
 
 The issue is whether the firearm was carried
 
 during and in relation to the commission of
 
 the crime.
 
 
 Hern ndez's counsel failed to object to this instruction, and it is
 
 also reviewed for plain error. 
 
 When presented with a strikingly similar situation in
 
 United States v. Luciano-Mosquera, 63 F.3d 1142, 1156 (1st Cir.
 
 1995), we found that the omission of "in relation to" did not
 
 constitute plain error. However, Hern ndez argues that Luciano-
 
 Mosquera was decided before the Supreme Court's decision in United
 
 States v. Johnson, 520 U.S. 461 (1997), in which the Court found
 
 the omission of an element of an offense to be plainly erroneous. 
 
 The government asserts, in response, that the court used the phrase
 
 "in relation to" both before identifying the specific elements and
 
 after, when it said that the "issue is whether the firearm was
 
 carried during and in relation to the commission of the crime." 
 
 Rather than wade into the murky waters of defining the elements of
 
 this crime, cf. United States v. Munoz, 143 F.3d 632, 637 (2d Cir.
 
 1998) (discussing a challenge to "the 'in relation to' element of
 
  924(c)(1)"); United States v. Currier, 151 F.3d 39, 41 (1st Cir.
 
 1997) (describing "during and in relation to" as a single element),
 
 we will assume, arguendo, both that the court's failure to mention
 
 it as a separate element was error and that the error was plain.
 
 Here again Hern ndez has failed to meet his burden of
 
 proving that his substantial rights were affected. See Olano, 507
 
 U.S. at 734 ("It is the defendant rather than the Government who
 
 bears the burden of persuasion with respect to prejudice."). To
 
 demonstrate prejudice Hern ndez must show that the court's omission
 
 affected the outcome of the trial. See id. We are convinced that
 
 the outcome was not affected, and the result would have been
 
 precisely the same. First, the jury found that he was an active
 
 participant in the drug deal, and rejected his "mere presence"
 
 defense. Second, it was undisputed that he was carrying a
 
 concealed weapon, albeit with a permit. Third, apart from the
 
 existence of the permit itself, there was no reason to believe that
 
 the gun was not "in relation to" the drug crime. The jury heard no
 
 evidence that he routinely carried the gun for self-protection, or,
 
 for that matter, that he had ever carried it on any other occasion. 
 
 Especially in light of the court's mentioning "in relation to"
 
 earlier, and its final statement that the "issue is whether the
 
 firearm was carried during and in relation to the commission of the
 
 crime," Hern ndez has failed to convince us that, had the court
 
 repeated the "in relation to" requirement as a explicit element,
 
 the jury would not have convicted him of possessing his weapon
 
 during and in relation to the drug crime.
 
 He also claims that the court failed to include a
 
 knowledge requirement in its instruction, and the jury therefore
 
 could have convicted him of carrying the gun under Ramirez's seat
 
 even though he was unaware of it. The simple response to this
 
 contention is that the statute does not include an explicit
 
 knowledge requirement, undoubtedly because it would be redundant. 
 
 The statute applies an additional punishment for "any person who,
 
 during and in relation to any crime of violence or drug trafficking
 
 crime . . . uses or carries a firearm[.]" 18 U.S.C.  924(c)(1). 
 
 The fact that the gun is carried "in relation to" the drug crime
 
 requires that the defendant have an identified reason for carrying
 
 the weapon. See Smith v. United States, 508 U.S. 223, 238 (1993)
 
 ("The phrase 'in relation to' thus, at a minimum, clarifies that
 
 the firearm must have some purpose or effect with respect to the
 
 drug trafficking crime; its presence or involvement cannot be the
 
 result of accident or coincidence."). It is logically impossible
 
 for an individual to carry something for a specified purpose
 
 without knowingly carrying it. See United States v. Padilla, 751
 
 F. Supp. 761 (N.D. Ill. 1990) (noting that  924(c)(1)'s terms
 
 "necessarily include a knowledge element"). If the jury found that
 
 he had constructively carried the gun under Ramirez's seat "in
 
 relation to" the drug transaction, by definition it determined that
 
 he knowingly carried it.
 
 C. Ramirez's leniency in return for cooperation
 
 Relying on United States v. Singleton, 144 F.3d 1343
 
 (10th Cir. 1998) ("Singleton I"), Hern ndez argues that his
 
 conviction was improper because the government violated the anti-
 
 bribery statute, 18 U.S.C.  201(c)(2), by promising something of
 
 value to Ramirez, namely, a lenient sentence recommendation, in
 
 return for his testimony against Hern ndez.
 
 This argument was not raised in the district court, and
 
 is subject to review only for plain error. See Fed. R. Crim. P.
 
 52(b). "At a minimum, [a] court of appeals cannot correct an error
 
 pursuant to Rule 52(b) unless the error is clear under current
 
 law." Olano, 507 U.S. at 734.
 
 At the time of Hern ndez's conviction in November 1997,
 
 no court had yet found a promise of leniency by the government in
 
 return for cooperation to be a violation of the anti-bribery
 
 statute. Singleton I, issued the following year, was viewed as a
 
 significant departure from existing precedent, was roundly
 
 questioned, and was swiftly vacated and reversed en banc. See
 
 United States v. Singleton, 165 F.3d 1297 (10th Cir. 1999) (en
 
 banc) ("Singleton II"). Every circuit and virtually every court
 
 facing the issue has criticized Singleton I's reasoning. See,
 
 e.g., United States v. Condon, 170 F.3d. 687, 688-89 (7th Cir.
 
 1999) United States v. Ramsey, 165 F.3d 980, 986 (D.C. Cir. 1999);
 
 United States v. Lowery, 166 F.3d 1119, 1123 (11th Cir. 1999); but
 
 see United States v. Fraguela, 1998 WL 560352 (E.D. La. Aug. 27,
 
 1998), vacated on other grounds, 1998 WL 910219 (E.D. La. Oct. 7,
 
 1998). In light of the lack of any previous caselaw, and the
 
 overwhelming condemnation of Singleton I, it is beyond question
 
 that Singleton I's holding is not "clear under current law." 
 
 Consequently, the court did not commit plain error in admitting
 
 Ramirez's testimony.D. Other claims of error
 
 Hern ndez presents four other bases on which we might
 
 rule that his conviction and sentence were improper. Because we
 
 are entirely unpersuaded by these other arguments, we decline to
 
 address any of them in more than a brief comment.
 
 Hern ndez posits that the district court improperly
 
 denied his motion to suppress the 9 millimeter gun found under the
 
 passenger seat. Warrantless inventory searches must be conducted
 
 according to standardized procedures. See United States v.
 
 Infante-Ruiz, 13 F.3d 498, 503 (1st Cir. 1994). The court found
 
 that the government followed official Drug Enforcement
 
 Administration policy in this case, and that finding is not clearly
 
 erroneous, see United States v. Zapata, 18 F.3d 971, 975 (1st Cir.
 
 1994). Therefore the search and seizure of the gun were lawful. 
 
 He also argues that the trial court permitted the
 
 government to pose leading questions and to impeach Ramirez
 
 improperly. The court's rulings in this area are reviewed for
 
 abuse of discretion. See United States v. Mulinelli-Navas, 111
 
 F.3d 983, 990 (1st Cir. 1997). A review of the transcript reveals
 
 that, at times, Ramirez was unresponsive or showed a lack of
 
 understanding. The court was well within the bounds of its
 
 discretion in permitting the government to clarify his testimony by
 
 leading Ramirez and, when appropriate, impeaching him.
 
 Hern ndez suggests that for sentencing purposes the
 
 government did not prove by a preponderance of the evidence that he
 
 knew the type or quantity of drugs involved. Although Ramirez
 
 initially denied mentioning the drug involved, he eventually
 
 admitted that, on the day the deal was to take place, he told
 
 Hern ndez that the money would be used to purchase cocaine. While
 
 there was equivocal evidence about whether Ramirez told Hern ndez
 
 about the quantity, the court ruled that Hern ndez knew or
 
 reasonably could have foreseen that the $123,500 loan would
 
 purchase more than five kilograms. This finding cannot be
 
 described as clearly erroneous. See United States v.
 
 Miranda-Santiago, 96 F.3d 517, 524 (1st Cir. 1996).
 
 Finally, claiming that his actions constituted aberrant
 
 behavior, Hern ndez moved for a downward departure. The court
 
 refused to grant Hern ndez's motion, stating that merely because
 
 "[g]ood people do bad things" "doesn't mean that those [actions]
 
 are aberrant behaviors." Unless the district court misapprehends
 
 the guidelines or misconstrues its authority to depart, we do not
 
 have jurisdiction to review discretionary decisions not to depart
 
 from sentences imposed under the Guidelines. See United States v.
 
 Grandmaison, 77 F.3d 555, 560 (1st Cir. 1996). The district court
 
 neither misapprehended the guidelines nor misconstrued its
 
 authority; it simply found that such a departure was unwarranted. 
 
 We lack any authority to countermand its decision.
 
 Affirmed.