**UNITED STATES of America,**
**Plaintiff, Appellee,**

v.

**Raymond HERNANDEZ–ALBINO,**
**Defendant, Appellant.**

No. 98–1643.

United States Court of Appeals,
First Circuit.

Heard March 1, 1999.

Decided May 20, 1999.

---

Peter Goldberger with whom Pamela A. Wilk was on brief, for appellant.

Camille Velez–Rive, Assistant United States Attorney, with whom Guillermo Gil, United States Attorney, Jorge E. Vega–Pacheco, Assistant United States Attorney, and John Teakell, Assistant United States Attorney, were on brief, for appellee.

Before TORRUELLA, Chief Judge, COFFIN, Senior Circuit Judge, and SELYA, Circuit Judge.

COFFIN, Senior Circuit Judge.

The government arrested defendant-appellant Raymond Hernández Albino ("Hernández") and several other men in a drug sting in Arecibo, Puerto Rico. Hernández was indicted, tried, convicted and sentenced. On appeal, he argues that the court made a series of mistakes both during trial and at sentencing. We are unpersuaded by his claims of error and affirm.

### I. *Background*

Testimony at trial revealed the following: On April 17, 1997, two government informants contacted Armando Cabrera Vargas ("Cabrera") regarding the sale of a number of kilograms of cocaine. Cabrera, in turn, went to see Orlando Ramirez Ortiz ("Ramirez"), and introduced Ramirez to the government informants. With Cabrera acting as middleman, the parties agreed that Ramirez would purchase seven kilograms of cocaine for $123,500.

Ramirez's problem was that he did not actually have that much money, so he approached his long-time friend Hernández for a loan for Ramirez's "business." When Hernández asked for more details, Ramirez offered vague assurances that he was sure of what he was doing and that the money would be repaid. Although Hernández was reluctant to lend this sizeable amount of capital without knowing the specifics of the business deal, he agreed to the transaction after Ramirez pledged his house and business as collateral. On April 23, 1997, the day the drug deal was to take place, Ramirez finally informed Hernández that the money was being used to purchase cocaine. When pressed at trial by prosecutors, Ramirez conceded that Hernández, still unsure about whether the transaction would be consummated, demanded to be present and carry the money.

When the time came, Ramirez called Hernández and told him to come to the back of the Villa Real Hotel, where the exchange was to take place. When Hernández arrived in his Toyota 4Runner truck, Ramirez got in[1] and inspected the money, which was in a sports gear bag. At that moment, one of the informants selling the drugs called Ramirez on his cellular phone and instructed Ramirez to drive to the front of the hotel. In front of the hotel the informant approached Hernández's truck, and told Hernández and Ramirez that "the Colombian" drug supplier (in reality an undercover government agent named Rolón) wanted to come check out the money. When Hernández inquired, Ramirez explained that Rolón owned the cocaine. Rolón inspected the money and departed allegedly to retrieve the drugs. Instead, he gave other agents

---

1. It is unclear whether Cabrera was also present in the truck, but we decline to address the conflict in testimony because Cabrera's presence is irrelevant to the issues before us.

the signal to arrest Hernández and Ramirez.

When Hernández was arrested, agents discovered in his waistband a concealed 9 millimeter handgun, which he had a valid permit to carry. The agents did not thoroughly search the vehicle at the scene but during a later inventory search found a different 9 millimeter gun with an obliterated serial number under the front passenger seat where Ramirez had been sitting.

Hernandez was indicted on three counts: (1) conspiracy to possess the seven kilograms of cocaine with the intent to distribute; (2) carrying a firearm during and in relation to the drug crime; and (3) possessing the gun with the obliterated serial number. Hernandez pled not guilty to all three charges.

Ramirez and Cabrera were also indicted, but both pled guilty and agreed to cooperate with the government in return for the government's promise to recommend leniency in sentencing. During a three day trial in mid-November 1997, the government called Ramirez as a witness. While Ramirez was on the stand, the court found him at times reluctant to testify and unresponsive to the government's questions, so it permitted the prosecutors to ask certain leading questions.

The case was eventually sent to the jury, and it began deliberating. Approximately two and one half hours later, the jury sent a note to the judge saying that "[t]he jury has not been able to come to a guilty or not guilty verdict. We are at an impasse." The judge consulted with counsel, and sent the following response, to which counsel did not object:

> All of you are equally honest and conscientious jurors who have heard the same evidence. All of you share an equal desire to arrive at a verdict. Each of you should ask yourself whether you should question the correctness of your present position. I remind you that in your deliberations you are to consider the instructions as a whole. Please continue the deliberations.

After deliberating for another hour, the jury found Hernández guilty of both count 1, conspiracy to possess cocaine with the intent to distribute, and count 2, carrying a gun during and in relation to a drug crime, but acquitted him on count 3, possession of the gun found under Ramirez's seat.

Hernández was subsequently sentenced to 181 months of imprisonment to be followed by five years of supervised release, and a special assessment of $200. This appeal ensued.

## II. *Discussion*

Hernández argues that his conviction and sentence were improper due to a number of alleged errors. While none of his claims is meritorious, three are worthy of developed consideration.

### A. *The court's supplemental charge*

Hernández claims that the court erred when it responded to the jury's impasse with the supplemental jury instruction, often described as a "dynamite" charge or an *Allen* charge, after *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). Counsel did not object at the time, and hence we review only for plain error. *See* Fed.R.Crim.P. 52(b); *United States v. Bradstreet*, 135 F.3d 46, 50 (1st Cir.1998).

█ Plain error analysis requires four steps. First, an error must have been committed. *United States v. Olano*, 507 U.S. 725, 732–33, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Second, the error must be plain or obvious. *Id.* at 734. Third, the plain error must "affect[ ] substantial rights," Fed.R.Crim.P. 52(b), which generally means that it must have been prejudicial, *see Olano*, 507 U.S. at 734. Finally, because Rule 52(b) is discretionary, we must be convinced that the error " 'seriously affect[s] the fairness, integrity or public reputation of judicial pro-

ceedings[ ]' " before we will order a new trial. *Id.* at 736 (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936)).

i. *The Error.* Any supplemental instruction in response to a jury's deadlock can have a significant coercive effect by intimating that some jury members should capitulate to others' views, or by suggesting that the members should compromise their rational positions in order to reach an agreement. *See United States v. Angiulo*, 485 F.2d 37, 39 (1st Cir.1973). Although federal courts have long sanctioned the use of supplemental charges in the face of an apparent impasse, *see Lowenfield v. Phelps*, 484 U.S. 231, 237, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988), we have warned that such action should be undertaken with "great caution and only when absolutely necessary," *United States v. Flannery*, 451 F.2d 880, 883 (1st Cir.1971).

■ Concerned about the instruction's potentially coercive effect, we have required that it contain three specific elements to moderate any prejudice. *See United States v. Paniagua–Ramos*, 135 F.3d 193, 197 (1st Cir.1998). First, in order that the burden of reconsideration is not shouldered exclusively by those jury members holding the minority view, the court should expressly instruct both the minority and the majority to reexamine their positions. *See Angiulo*, 485 F.2d at 39. Second, the instruction should acknowledge that the jury has the right not to agree. *See Jenkins v. United States*, 380 U.S. 445, 446, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965) (per curiam). Third, the court should remind the jury that the burden of proving guilt beyond a reasonable doubt remains, as always, with the government. *See Paniagua–Ramos*, 135 F.3d at 197.

■ The charge at issue did not meet these criteria. While it could be argued that the first element was satisfied because each person was instructed to question the correctness of his or her position, the instruction did not address either of the other two requirements in any manner whatsoever. Although we have consistently refrained from offering any definite wording for an *Allen* charge, the instruction should have referenced in some way all three essential elements. The court's failure to do so was error.

The government presents a somewhat tautological argument in response. It claims that the omission of two elements was not erroneous because the instruction was not an *Allen* charge, and it was not an *Allen* charge because it did not follow the accepted format, *i.e.*, it did not contain all three elements. In addition to protecting any supplemental instruction such as this one from judicial review for consistency with the three *Allen* criteria, the government's argument ignores our explicit ruling that "*any* supplemental instruction which urges the jury to return to its deliberations *must* include the three balancing elements stated above." *Angiulo*, 485 F.2d at 40 (emphasis added).

■ ii. *The Clarity of the Error.* It is equally obvious that the second requirement, *i.e.*, that the error is clear, has also been met. We first discussed the three elements in *Flannery* in 1971, and have followed them with unwavering devotion ever since. We have addressed them on a number of occasions, even describing them as "essential," *United States v. Vachon*, 869 F.2d 653, 659 (1st Cir.1989). The district court's failure to mention either of the last two elements constituted plain error.

■ iii. *Affecting substantial rights.* Although the error was plain, we may not reverse Hernández's conviction and order a new trial unless the error "affect[ed] substantial rights." Fed.R.Crim.P. 52(b). In a challenge to an improper *Allen* charge, the relevant inquiry revolves around whether the charge "in its context and under all the circumstances" coerced the jury into convicting him. *Lowenfield*, 484 U.S. at 237. Hernández's counsel below admitted that the charge was "not

coercive in the least." We agree, based on both the length of deliberations after the *Allen* charge and the verdict's internal consistency. *See United States v. Plunk*, 153 F.3d 1011, 1027 (9th Cir.1998); *Paniagua–Ramos*, 135 F.3d at 199.

The length of deliberations in this case negates any suggestion of coercion. The jury's task was relatively straightforward. The government claimed Hernández joined Cabrera's and Ramirez's drug conspiracy because Hernández lent Ramirez the money after learning that it would be used to purchase drugs. Hernández's defense was that he was "merely present" when the drug deal occurred. Deciding which version of events to believe was a relatively uncomplicated exercise. It appears that the jury recognized as much and seemed to expect that deliberations would be swift: they complained of an impasse after deliberating for only two and one half hours. After the judge sent the written supplemental instruction, the jury deliberated for another hour.

Numerous courts have found no coercion under similar circumstances. *See Green v. French*, 143 F.3d 865, 886 (4th Cir.1998) (concluding that a one hour deliberation after a supplemental *Allen* instruction failed to suggest coercion); *United States v. Hernandez*, 105 F.3d 1330, 1334 (9th Cir.1997) (stating that deliberations of 40 minutes after *Allen* charge did not "raise the specter of coercion"); *United States v. Smith*, 635 F.2d 716, 721–22 (8th Cir.1980) (finding no coercion when jury deliberated forty-five minutes after *Allen* charge, in addition to previous three hour total deliberations). We note, however, that these cases do not establish a formula, but rather are illustrative of the principle that sufficient additional time can help to establish an absence of coercion. That principle is particularly applicable in this case, where the total time of deliberation was roughly 3½ hours, of which the deliberations after the *Allen* charge represented almost one third.

The other relevant circumstance in this case, namely, the verdict's internal consistency, also implies an absence of coercion. As noted earlier, Hernández was convicted of conspiring to possess cocaine with the intent to distribute. He was also convicted of carrying a gun, either the one on his person or the one under Ramirez's seat, during and in relation to the drug crime. Finally, he was acquitted of possessing the gun with an obliterated serial number which was found underneath Ramirez's seat. The jury's verdict indicates that it found Hernández guilty of the drug crime and of carrying his own gun, but rejected the government's argument that he constructively possessed the firearm under Ramirez's seat.[2] The internal consistency of this result suggests a nuanced analysis and reasoned decision. *See Plunk*, 153 F.3d at 1027 (concluding that "the fact that the jury rendered a mixed verdict [on independent counts] ... suggests that it reviewed the evidence rationally and independently"); *cf. Paniagua–Ramos*, 135 F.3d at 199 (finding confusion when jury convicted defendant of conspiracy but acquitted him on the underlying substantive charge, because evidence suggested defendant was either innocent of both or guilty of both).

Because the jury was not coerced, the court's error did not affect Hernández's substantial rights, and we will not reverse his conviction due to the erroneous *Allen* charge.

B. *Carrying a gun "during and in relation to" a drug crime*

Hernández challenges two related aspects of the jury instructions on count two,

**2.** We acknowledge that it is theoretically possible that the jury found Hernández had constructively possessed the weapon under Ramirez's seat but found that the government had failed to prove that he knew that its serial number had been obliterated, an element in the jury's instructions. However, such a decision would also have been internally consistent, and would not imply coercion.

namely, the failure to give a specific unanimity charge on which gun was carried, and the omission of the words "knowing" and "in relation to" from certain portions of the instructions.

i. *Unanimity on which gun was carried.* Hernández claims that the court committed plain error because the jury was not instructed that it had to agree which gun Hernández carried before he could be convicted. Raised for the first time on appeal, this claim is also reviewed for plain error.

██ In this case no error was committed. The court was not required to give a specific unanimity instruction because the jury, in fact, was not required to agree on the specific gun carried. Although Federal Rule of Criminal Procedure 31(a) requires that a criminal conviction be unanimous, the jury need not necessarily agree on the facts underlying that conviction. *See United States v. Tarvers,* 833 F.2d 1068, 1074 (1st Cir. 1987) (unanimity generally not required with respect to a specific act underlying an element of a charged offense). When the government alleges in a single count that the defendant committed the offense by one or more specified means, the Supreme Court has "never suggested that in returning general verdicts in such cases the jurors should be required to agree on a single means of commission, any more than the indictments were required to specify one alone." *Schad v. Arizona,* 501 U.S. 624, 631, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991); *see also United States v. Reeder,* 170 F.3d 93, 105 (1st Cir.1999) (noting that the jury must agree that the government has proven all the elements of an offense beyond a reasonable doubt, but "it need not agree on the means by which all the elements were accomplished").

██ Although unanimity is required when such a determination matters for sentencing purposes, *see United States v. Melvin,* 27 F.3d 710, 715 (1st Cir.1994) (finding enhanced mandatory sentence resulting from one particular firearm not supportable when the jury might have concluded that defendant carried a different firearm not subject to the enhancement), the jury need not reach unanimous agreement on the identity of the weapon when the defendant is charged with violating § 924(c) due to carrying more than one firearm and none of the weapons justifies more than the statutory minimum sentence. *See United States v. Correa–Ventura,* 6 F.3d 1070, 1075–87 (5th Cir.1993) (concluding that specific unanimity was not required when § 924(c) conviction could have been based on any one of ten weapons seized).

██ ii. *Omission of "knowing" and "in relation to" during instructions.* Next, Hernández argues that the court committed plain error by omitting both "knowing" and "in relation to" from the instructions. He argues that his licensed pistol had no relationship to the drug offense and that he did not knowingly carry the weapon found under Ramirez's seat. Consequently, the instructions allowed the jury to convict him either for his routine possession of a concealed weapon as authorized by his permit or without knowing the gun was under Ramirez's seat.

> The court instructed the jury as follows:
>
> Now, Count Two of the indictment charges the defendant with carrying a pistol or firearm during and in relation to a drug trafficking transaction.…
>
> Now, two essential elements are required to be proved beyond a reasonable doubt in order to establish the offense charged in Count Two of the indictment. And these are as follows: First, that the defendant committed a drug trafficking crime for which he may be prosecuted in a court of the United States. And second, that during the commission of that crime, the defendant carried a firearm.
>
> The fact that a person may have a permit to carry a weapon is irrelevant in this matter. The issue is whether the

firearm was carried during and in relation to the commission of the crime. Hernández's counsel failed to object to this instruction, and it is also reviewed for plain error.

When presented with a strikingly similar situation in *United States v. Luciano–Mosquera*, 63 F.3d 1142, 1156 (1st Cir. 1995), we found that the omission of "in relation to" did not constitute plain error. However, Hernández argues that *Luciano–Mosquera* was decided before the Supreme Court's decision in *Johnson v. United States*, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), in which the Court found the omission of an element of an offense to be plainly erroneous. The government asserts, in response, that the court used the phrase "in relation to" both before identifying the specific elements and after, when it said that the "issue is whether the firearm was carried during and in relation to the commission of the crime." Rather than wade into the murky waters of defining the elements of this crime, *cf. United States v. Munoz*, 143 F.3d 632, 637 (2d Cir.1998) (discussing a challenge to "the 'in relation to' element of § 924(c)(1)"); *United States v. Currier*, 151 F.3d 39, 41 (1st Cir.1998) (describing "during and in relation to" as a single element), we will assume, *arguendo*, both that the court's failure to mention it as a separate element was error and that the error was plain.

■■■ Here again Hernández has failed to meet his burden of proving that his substantial rights were affected. *See Olano*, 507 U.S. at 734 ("It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice."). To demonstrate prejudice Hernández must show that the court's omission affected the outcome of the trial. *See id.* We are convinced that the outcome was not affected, and the result would have been precisely the same. First, the jury found that he was an active participant in the drug deal, and rejected his "mere presence" defense. Second, it was

undisputed that he was carrying a concealed weapon, albeit with a permit. Third, apart from the existence of the permit itself, there was no reason to believe that the gun was not "in relation to" the drug crime. The jury heard no evidence that he routinely carried the gun for self-protection, or, for that matter, that he had ever carried it on any other occasion. Especially in light of the court's mentioning "in relation to" earlier, and its final statement that the "issue is whether the firearm was carried during and in relation to the commission of the crime," Hernández has failed to convince us that, had the court repeated the "in relation to" requirement as a explicit element, the jury would not have convicted him of carrying his weapon during and in relation to the drug crime.

■■■ He also claims that the court failed to include a knowledge requirement in its instruction, and the jury therefore could have convicted him of carrying the gun under Ramirez's seat even though he was unaware of it. The simple response to this contention is that the statute does not include an explicit knowledge requirement, undoubtedly because it would be redundant. The statute applies an additional punishment for "any person who, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm[.]" 18 U.S.C. § 924(c)(1). The fact that the gun is carried "in relation to" the drug crime requires that the defendant have an identified reason for carrying the weapon. *See Smith v. United States*, 508 U.S. 223, 238, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) ("The phrase 'in relation to' thus, at a minimum, clarifies that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence."). It is logically impossible for an individual to carry something for a specified purpose without knowingly carrying it. *See United States v. Padilla*, 751 F.Supp. 761 (N.D.Ill. 1990) (noting that § 924(c)(1)'s terms "nec-

essarily include a knowledge element"). If the jury found that he had constructively carried the gun under Ramirez's seat "in relation to" the drug transaction, by definition it determined that he knowingly carried it.

### C. *Ramirez's leniency in return for co-operation*

■ Relying on *United States v. Singleton,* 144 F.3d 1343 (10th Cir.1998) ("*Singleton I* "), Hernández argues that his conviction was improper because the government violated the anti-bribery statute, 18 U.S.C. § 201(c)(2), by promising something of value to Ramirez, namely, a lenient sentence recommendation, in return for his testimony against Hernández.

This argument was not raised in the district court, and is subject to review only for plain error. *See* Fed.R.Crim.P. 52(b). "At a minimum, [a] court of appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law." *Olano,* 507 U.S. at 734.

At the time of Hernández's conviction in November 1997, no court had yet found a promise of leniency by the government in return for cooperation to be a violation of the anti-bribery statute. *Singleton I,* issued the following year, was viewed as a significant departure from existing precedent, was roundly questioned, and was swiftly vacated and reversed *en banc. See United States v. Singleton,* 165 F.3d 1297 (10th Cir.1999) (en banc) ("*Singleton II* "). Every circuit and virtually every court facing the issue has criticized *Singleton I*'s reasoning. *See, e.g.; United States v. Condon,* 170 F.3d 687, 688–89 (7th Cir.1999) *United States v. Ramsey,* 165 F.3d 980, 986 (D.C.Cir.1999); *United States v. Lowery,* 166 F.3d 1119, 1123 (11th Cir.1999); *but see United States v. Fraguela,* 1998 WL 560352 (E.D.La. Aug. 27, 1998), *vacated on other grounds,* 1998 WL 910219 (E.D.La. Oct. 7, 1998). In light of the lack of any previous caselaw, and the overwhelming condemnation of *Singleton I,* it is beyond question that *Singleton I*'s hold-ing is not "clear under current law." Consequently, the court did not commit plain error in admitting Ramirez's testimony.

### D. *Other claims of error*

Hernández presents four other bases on which we might rule that his conviction and sentence were improper. Because we are entirely unpersuaded by these other arguments, we decline to address any of them in more than a brief comment.

■ Hernández posits that the district court improperly denied his motion to suppress the 9 millimeter gun found under the passenger seat. Warrantless inventory searches must be conducted according to standardized procedures. *See United States v. Infante–Ruiz,* 13 F.3d 498, 503 (1st Cir.1994). The court found that the government followed official Drug Enforcement Administration policy in this case, and that finding is not clearly erroneous, *see United States v. Zapata,* 18 F.3d 971, 975 (1st Cir.1994). Therefore the search and seizure of the gun were lawful.

■ He also argues that the trial court permitted the government to pose leading questions and to impeach Ramirez improperly. The court's rulings in this area are reviewed for abuse of discretion. *See United States v. Mulinelli–Navas,* 111 F.3d 983, 990 (1st Cir.1997). A review of the transcript reveals that, at times, Ramirez was unresponsive or showed a lack of understanding. The court was well within the bounds of its discretion in permitting the government to clarify his testimony by leading Ramirez and, when appropriate, impeaching him.

■ Hernández suggests that for sentencing purposes the government did not prove by a preponderance of the evidence that he knew the type or quantity of drugs involved. Although Ramirez initially denied mentioning the drug involved, he eventually admitted that, on the day the

deal was to take place, he told Hernández that the money would be used to purchase cocaine. While there was equivocal evidence about whether Ramirez told Hernández about the quantity,[3] the court ruled that Hernández knew or reasonably could have foreseen that the $123,500 loan would purchase more than five kilograms. This finding cannot be described as clearly erroneous. *See United States v. Miranda–Santiago*, 96 F.3d 517, 524 (1st Cir.1996).

Finally, claiming that his actions constituted aberrant behavior, Hernández moved for a downward departure. The court refused to grant Hernández's motion, stating that merely because "[g]ood people do bad things" "doesn't mean that those [actions] are aberrant behaviors." Unless the district court misapprehends the guidelines or misconstrues its authority to depart, we do not have jurisdiction to review discretionary decisions not to depart from sentences imposed under the Guidelines. *See United States v. Grandmaison*, 77 F.3d 555, 560 (1st Cir.1996). The district court neither misapprehended the guidelines nor misconstrued its authority; it simply found that such a departure was unwarranted. We lack any authority to countermand its decision.

*Affirmed.*

---

**3.** At one point, Ramirez stated that Hernández did know how much cocaine was involved, but later conceded that the reason Hernández "agreed to provide financing for the cocaine deal, the seven kilogram deal" was because he would be repaid promptly.