# United States Court of Appeals
# For the First Circuit

No. 04-1395

UNITED STATES OF AMERICA,

Appellee,

v.

CHARLES GLENN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

Before

Lynch, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lipez, Circuit Judge.

Paul J. Haley for appellant.
Mark E. Howard, Assistant United States Attorney, with whom Thomas P. Colantuono, United States Attorney, was on brief, for appellee.

November 24, 2004

**LYNCH**, <u>Circuit Judge</u>.  Charles Glenn was found guilty on September 9, 2003, of one count of distribution of Xanax and one count of distribution of cocaine base ("crack cocaine") in violation of 21 U.S.C. § 841(a)(1).  He appeals from the denial, on untimeliness grounds, of his motion for new trial and argues, in this direct appeal, that if the new trial motion was too late, then his counsel was ineffective for this and other reasons and so both the denial of the new trial and his conviction should be vacated.  The short response is the motion was too late, not being filed within the seven days required by Federal Rule of Criminal Procedure 33, and to obtain a remedy, if any, on his claims of trial counsel's misfeasance, he must pursue an ineffective assistance claim on collateral attack.

He also urges us to overrule <u>Siciliano</u> v. <u>Vose</u>, 834 F.2d 29 (1st Cir. 1987), and hold that a trial judge must sua sponte instruct a defendant on his right to testify.  Not only does this panel lack the authority to overrule <u>Siciliano</u>, we would not, if we could.  There are very good reasons for the <u>Siciliano</u> rule.

Finally, he argues the denial of his motion for mistrial, after certain testimony by a police officer, was in error, regardless of the fact that an appropriate limiting instruction was given.  We disagree.  In short, we affirm.

At Glenn's trial, Frank Swirko, an undercover Manchester police officer and member of the New Hampshire Attorney General's Drug Task Force, testified as follows. On February 6, 2002, Swirko went to a hotel in Manchester on a tip from a confidential informant that a woman, Tina Gerow, was selling crack cocaine there. After Swirko purchased crack from Gerow, the appellant, Charles Glenn, entered the room. Swirko acknowledged to Gerow that he knew "Charlie," and Glenn then offered to sell Swirko some Xanax pills. Swirko agreed, and later that evening purchased thirteen pills of Xanax from Glenn for $80.

On February 19, 2002, the same confidential informant called Swirko and told him that he was with Glenn and that Glenn wanted to sell Swirko drugs. Glenn came to the phone and identified himself as "Black Charlie" and "Tina Gerow's Charlie." The officer and defendant met at a bar about ten minutes later, and Swirko agreed to buy $125 worth of heroin from Glenn. Another male was with them as well, who wanted to buy $100 worth of crack cocaine. Following Glenn's instructions, Swirko then drove them to Glenn's source; the source did not have any heroin. Glenn said he would get the desired crack cocaine from Tina Gerow; Swirko then added his own request to buy some crack cocaine. They then drove to a nearby neighborhood where Glenn left the vehicle with money from Swirko and the other buyer, and returned with crack cocaine.

Because Swirko was working undercover and did not want to compromise his investigation or his identity, Glenn was not arrested immediately.

On March 12, 2002, Glenn was indicted on one count of distribution of Xanax and two counts of distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1). He was arrested in November 2002. Before trial, the government filed a § 851 notice of sentence enhancement based on Glenn's prior drug convictions. 21 U.S.C. § 851.

The defense filed a pre-trial motion in limine to prevent Swirko from referring in his testimony to any of Glenn's prior arrests. The government stated that any officers testifying about their familiarity with Glenn would only mention that they had known him in the past, and would not mention any arrests. The court allowed the testimony, and offered Glenn's counsel the opportunity to have a jury instruction about the testimony both when offered and prior to deliberation.

Swirko's direct testimony was that during his thirteen years as a police officer he had had many contacts with Glenn and so could identify Glenn easily. During cross-examination, the defense asked Swirko if he had ever identified Glenn through an identification card, to which Swirko replied no. On redirect, the government responded by asking Swirko whether it was necessary to ask Glenn for an identification card during the course of these

-4-

transactions.  Swirko replied "No," "Because I knew Mr. Glenn.  I knew who he was.  I had dealt with him numerous times in the past.  I had viewed pictures of him.  I knew who he was."

Glenn's counsel objected and moved for a mistrial, stating that the reference to viewing pictures suggested to the jury that Swirko had seen mug shots of Glenn, in violation of the in limine order.  The court denied a mistrial, but gave a curative instruction that any testimony concerning Swirko's prior involvement with the defendant could only be considered for determining the accuracy of Swirko's identification.

Other witnesses cemented Glenn's guilt.  Tina Gerow testified that the transactions of February 6 and 19 occurred as Swirko had testified.  Surveillance officers working with Swirko on the night of these transactions also testified that Glenn was the seller of the drugs.

Glenn asserted an alibi defense, and offered four witnesses to testify on his behalf.  Each stated that at the time of the alleged offenses, Glenn was not in Manchester but rather was visiting relatives in Massachusetts.  Glenn did not testify.  On September 9, 2003, the jury convicted Glenn for the February 6 sale of Xanax and the February 19 sale of cocaine base.

On December 30, 2003, Glenn's trial counsel withdrew from the case and new counsel was appointed.  On February 2, 2004, more than five months after his conviction, Glenn's new counsel filed a

motion for new trial, alleging ineffective assistance of counsel based on Glenn's trial counsel's purported refusal to allow Glenn to testify at trial. The district court denied the motion as untimely under Rule 33.

On March 4, 2004, the district court sentenced Glenn to 262 months imprisonment. Glenn was sentenced as a career offender, based on previous convictions for sale of controlled substances. See 21 U.S.C. § 851. In addition to the issues raised earlier, Glenn raises for the first time on appeal an objection to his being sentenced under the Federal Sentencing Guidelines in light of the Supreme Court's decision in Blakely v. Washington, 124 S. Ct. 2531 (2004). We affirm the decisions of the district court on all claims, and deny Glenn's Blakely claim raised for the first time here.

**II.**

A. Denial of Motion for New Trial

Glenn admits the motion was late but says the lateness should be excused on grounds of equitable tolling, based on the ineffectiveness of his trial counsel. He represents that he asked counsel to withdraw immediately after the verdict, and that counsel did not do so for several months, and in that time did not inform him of the seven-day limitations period for filing a new trial motion.

Review of the denial of a motion for new trial is for manifest abuse of discretion. United States v. Gonzalez-Gonzalez, 258 F.3d 16, 20 (1st Cir. 2001). This court has repeatedly held that the seven-day limitations period for Rule 33 motions is jurisdictional, and therefore a district court is without power to hear such motions not filed within the seven-day period, unless based on newly discovered evidence, in which case the limitations period is two years. United States v. Diaz, 300 F.3d 66, 78 (1st Cir. 2002). Glenn filed his motion almost five months after the seven-day period ended. There was no error.

B. Ineffective Assistance of Counsel

Glenn argues that his trial counsel was ineffective in that counsel denied him his right to testify, did not properly research or prepare his alibi defense, and failed to file a timely new trial motion. Unless the record is sufficiently developed on appeal such that reasoned consideration of the ineffective assistance claim is possible, the proper vehicle to raise such a claim is a collateral proceeding under 28 U.S.C. § 2255. United States v. Genao, 281 F.3d 305, 313 (1st Cir. 2002). There are simply no facts of record on any of these claims, whatever their merits, and Glenn does not fall within the exception.

C. Denial of Mistrial

Glenn argues that Officer Swirko's statement that he had seen pictures of Glenn in the past was so prejudicial that no jury

instruction could cure the potential prejudice. We will reverse a denial of a motion for a mistrial only when the defendant shows clear prejudice rendering the district court's denial a manifest abuse of discretion. United States v. Freeman, 208 F.3d 332, 339 (1st Cir. 2000). Where, as here, "a curative instruction is promptly given, a mistrial is warranted only in rare circumstances implying extreme prejudice." Id. (quoting United States v. Torres, 162 F.3d 6, 12 (1st Cir. 1998) (emphasis added)).

Glenn's claim is utterly frivolous. The district court's curative instruction was more than adequate to cure any potential prejudice from Officer Swirko's statement that he had previously seen photographs of Glenn. It is also far from clear that the particular testimony was inadmissible. Furthermore, given the overwhelming evidence of Glenn's guilt, he has failed to demonstrate that this statement amounted to "clear prejudice."

D. Lack of Judicial Instructions on Right to Testify

Glenn asks us to overturn an earlier decision of this court in Siciliano v. Vose, 834 F.2d 29 (1st Cir. 1987), which held that the trial court is not constitutionally required to advise the defendant of his right to testify or to procure an express waiver of that right from the defendant. Id. at 30. The reasoning of Siciliano, that such a rule might unduly pressure the defendant to waive his "more fragile" constitutional right not to testify, retains force. Id. at 30. Moreover, only an en banc court or

intervening controlling law may reverse the rule established by an earlier panel. See Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 160 & n.4 (1st Cir. 2004). Even were we free to do so, we would not.

E.  Blakely Claim

In supplemental briefing, Glenn asked us to remand his case to the district court for resentencing in light of the Supreme Court's decision in Blakely v. Washington, 124 S. Ct. 2531 (2004). Because Glenn did not challenge the constitutionality of his sentencing enhancement below, our review is for plain error. See United States v. Cordoza-Estrada, 385 F.3d 56, 59 (1st Cir. 2004). Under plain error review, the challenging party has the burden of showing (1) an error, (2) that is plain, (3) that affects substantial rights (i.e. the error was not harmless), and (4) that seriously undermines the fairness, integrity, or public reputation of judicial proceedings. United States v. Olano, 507 U.S. 725, 732 (1993). Glenn's claim fails to satisfy the prongs of plain error review. See United States v. Morgan, 384 F.3d 1, 8 (1st Cir. 2004).

The judgment and sentence are **affirmed**.