ATLANTIC RESEARCH MARKETING SYSTEMS, INC., Plaintiff,

v.

Stephen P. TROY, Jr., and Troy Industries, Inc., Defendants.

Civil Action No. 07–11576–PBS.

United States District Court, D. Massachusetts.

Nov. 30, 2009.

Christine K. Bush, Scott & Bush, LTD., Providence, RI, Ann Lamport, Hammitte Lando & Anastasi LLP, Cambridge, MA, for Plaintiff.

Damian R. LaPlaca, Nicholas A. Ogden, Donovan Hatem LLP, Christian G. Samito, Jouret & Samito LLP, Boston, MA, Carla Miriam, Levy Lowrie, Thomas P. McNulty, Lando & Anastasi, LLP, Cambridge, MA, Craig M. Scott, Scott & Bush, LTD., Providence, RI, for Defendants.

## MEMORANDUM AND ORDER

SARIS, District Judge.

## INTRODUCTION

After a two-week trial, a jury rendered a verdict in favor of Atlantic Research Marketing Systems, Inc. ("A.R.M.S.") on its claims that defendant Stephen P. Troy, Jr., a former employee, breached his fiduciary duty and misappropriated trade secrets by manufacturing and selling a handguard designed for the AR1/M4/M16 family of rifles. The jury awarded damages against Troy and his company, Troy Industries, Inc., in the amount of $1,813,465.

Defendants move for a mistrial on the grounds: (1) that the Court failed to timely and fully determine whether the introduction of an external piece of evidence—a clamp—by a juror during deliberations prejudiced the jury, and (2) that the Court gave a "second" *Allen* charge which was unduly coercive and prejudicial. The motion is **DENIED.**

## FACTUAL BACKGROUND

### A. *Deliberations*

The jury began deliberating on June 24, 2009, at approximately 2:00 p.m. They completed deliberations for the day just before 5:00 p.m. without reaching a verdict or submitting any questions.

On the second day of deliberations, June 25, the jury sent a question to the Court at 2:04 p.m.:

> If we cannot reach a unanimous decision after exhausting all points presented to each other during our deliberation, do we have an idea of how long deliberations will continue if we are still at an impasse every day?

(Note from Jury, June 25, 2009, 2:04 p.m.) The jury also asked the Court if something could be done for a juror that was having a business hardship. (Note from Jury, June 25, 2009, 2:04 p.m.) Ten minutes later, at 2:15 p.m., before the Court had an opportunity to address the jury's questions, the jury sent a second note asking for copies of the transcripts of the testimony of Stephen Troy and Richard Swan. (Note from Jury, June 25, 2009, 2:15 p.m.)

In response to the jury questions, the Court brought the jury back into the courtroom, agreed to give them the transcripts, and gave the following instruction:

> It's too soon to give up deliberating. It's an important case. There's a lot of time put into it and maybe the transcripts will help break a logjam.

> I also encourage you, if there are any legal questions or questions to get through to write it out, because that, at times, really helps clarify for people on

one side or the other of the dispute what's holding up—but it may also be that these transcripts will do the trick.

So write a question, look at the transcripts, and I'll deal with the hardship question at the end of the day today. (Trial Tr. vol. 8, 5:9–18, June 25, 2009.) Counsel did not object to the charge or request an *Allen* charge at that time. The transcripts were provided as promised. At some point during the afternoon, one member of the jury verbally informed Robert Alba, Courtroom Deputy Clerk, that it was deadlocked 9–1.[1] At 4:50 p.m., the jury finished deliberations for the second day. The Court asked the juror with the hardship to remain behind and inquired into the nature of the hardship. The Court asked, "Does this have anything to do with deliberations back there, your position on it one way or another?" (Trial Tr. vol. 8, 7:23–25.) Denying his request had anything to do with the deliberations, the juror responded with, "I'm actually—" but the Court cut him off. (Trial Tr. vol. 8, 8:1.) After consulting with counsel, the Court agreed to dismiss the juror at 1:00 p.m. on the following day if there had not yet been a final determination at that time.

### B. *Deadlock*

On the third day of deliberations, at 12:03 p.m., the jury gave the Court a note informing the Court that it was deadlocked:

> We are currently stuck in a deadlock. It appears we have argued all points of the case to the best of both sides ability. We firmly feel that an unanimous decision can not be made.
>
> Also, a juror brought in a clamp from his/her basement trying to make an argument. Is bringing outside items allowed?

> Also, some jurors feel another juror is sympathetic to a certain side on this case, and is causing us to not reach an unanimous decision. How should we proceed?

(Note from Jury, June 26, 2009, 12:03 p.m.)

In response, the Court informed the parties that it intended to read an *Allen* charge, and gave counsel a draft of the standard charge. The following colloquy occurred:

THE COURT: As you've seen, we got another note from the jury, which does not look promising. Have you both had a chance to read it?

MR. LaPLACA: Yes.

THE COURT: So I think it's time to read the charge to a hung jury. I modified the 1st Circuit instruction from the so-called *Allen* charge. Do you want to read it, what I've done?

MR. LaPLACA: I'd like to. I think you more or less gave it to them yesterday.

THE COURT: No, I didn't.

MR. LaPLACA: Not in the 1st Circuit mode, but you said go back and try again.

THE COURT: This is—well—

MR. LaPLACA: They said in their note we firmly believe, not just we believe, we firmly believe we can't come to a unanimous decision. I think we'd just be forcing the issue.

THE COURT: Well, I did not read them an *Allen* charge yesterday. Typically the first time I say go back, try again; second time I do something more elaborate; the third time I declare a mistrial. I also am going to take the clamp, and I'm also going to tell them they shouldn't decide based

---

1. The information Mr. Alba supplied to the parties at sidebar on the numerical break-down of the deadlock apparently was not transcribed.

on sympathy. So I'm going to bring them in, do this, I think lunch has been ordered, and then—do you want to read the *Allen* charge?

MR. LaPLACA: It's a standard—

(Trial Tr. vol. 9, 3:2–4:4, June 26, 2009.) As no party objected to giving the charge or to the text of the Court's proposed *Allen* charge, the Court instructed the jury as follows:

You've reported now to me a second time that you are in deadlock, and there's a special instruction I'm required to give you. But let me deal with two other matters first that you raise.

One is I guess someone brought in a clamp. I am not actually really sure what that would look like, but I need to take that out of the jury room, and we'll give that to the court officer to be returned when the deliberations are over.

... [T]he case cannot be based on sympathy. It's got to be based on an objective view of the evidence. It might be sympathy for one side or the other side, that's often true, but it's got to be viewed on a rational, concrete objective view of the evidence.

Now, let me now read to you the charge that I'm required to give to you when a jury announces itself deadlocked.

I'm going to instruct you to go back and resume your deliberations. I'll explain why.

In trials, absolute certainty can neither be expected nor attained. You should consider that you are selected in the same manner and from the same source as any future jury would be selected. There's no reason to suppose that this case would ever be submitted to men and women more intelligent, more impartial, or more competent to decide it than you are, or that more or clearer evidence would ever be produced in the future.

Thus, it's your duty to decide the case, if you can conscientiously do so, without violence to your individual judgment.

The verdict to which a juror agrees must, of course, be his or her own verdict, the result of his or her own convictions, and not a mere acquiescence in the conclusion of his or her fellow jurors. Yet, in order to bring minds to a unanimous result, you must examine the questions submitted to you with an open mind in proper regard for the deference to other jurors. In conferring together you ought to pay proper respect to each other's opinions and you ought to listen with a mind open to listen to each other's arguments. Thus, where there is disagreement, jurors on one side should consider whether their view is a reasonable one when it makes no impression upon the minds of the other equally honest and intelligent jurors on the other side who have heard the same evidence with the same degree of attention and with the same desire to arrive at the truth under the sanction of the same oath.

Not only should jurors in the minority re-examine their positions, but jurors in the majority should do so also to see whether they have given careful consideration and sufficient weight to the evidence that has favorably impressed the person in disagreement with them.

Burden of proof is a legal tool for helping you decide. The law imposes upon the plaintiff the burden of proof. The plaintiff has the burden to establish with respect to each of the claims each essential element of the claim and to establish that essential element by a preponderance of the evidence. And if with respect to any element of any claim plaintiff has not met its burden, the defendant must be found not liable. If, on the other hand, plaintiff has met its

burden on a claim, you must find in its favor.

It is your duty to decide the case if you can conscientiously do so without violence to your individual judgment. It is also your duty to return a verdict on any claim as to which all of you agree, even if you can't agree on all claims. But if you cannot agree, it is your right to fail to agree.

I now instruct you to go back and resume your deliberations in this case. (Trial Tr. vol. 9, 4:20–7:14.)

With respect to the extraneous clamp, the parties did not seek a cautionary instruction or an immediate voir dire. There was likewise no objection to the substance of the charge.

After the Court instructed the jury to resume deliberations, it told the Courtroom Deputy to retrieve the clamp. Mr. Alba reported that "[a]pparently the juror brought in the clamp yesterday, it's no longer here today." (Trial Tr. vol. 9, 8:13–14.) The Court excused the juror with the hardship at around 1:00 p.m. At 2:20 p.m. and again at 3:00 p.m., the jury submitted additional legal questions. They also asked for the exhibits that had accompanied the expert damages testimony. At 4:22 p.m., about three hours after the *Allen* charge, the jury asked a question related to damages.

When the lawyers were brought in to discuss the question, Troy's lawyer asked for a voir dire regarding the clamp and the juror that had been dismissed. (Trial Tr. vol. 9, 11:8–12.) The Court stated, "Maybe I'll just bring them in for a minute [referring to the damages question]. If you want, we can do a voir dire question on those two issues. Not now, after the verdict is rendered." (Trial Tr. vol. 9, 11:19–22). At 5:05 p.m., less than an hour later, the jury returned a verdict in favor of A.R.M.S.

## C. *The Clamp*

After the jury had reached its verdict, the Court examined each of the jurors, one at a time at sidebar and out of earshot of the other jurors, concerning the clamp. All of the jurors indicated that the clamp was made of copper. Most of the jurors indicated that it appeared to be used for plumbing. None of the jurors identified any improper influence or prejudice resulting from the clamp. All of the jurors confirmed that the clamp was no longer present when they finally were able to break the stalemate and reach a verdict. Juror No. 7 was identified as the person that brought in the clamp. Troy's counsel did not object to the timing, substance, or procedural approach of the Court's inquiry, nor did Troy's counsel request that the Court ask additional, or different, questions of the jurors collectively, or of any juror in particular.

On July 13, 2009, in response to Troy's Motion to Recall Juror No. 7, the Court examined Juror No. 7 concerning the clamp. Juror No. 7 stated:

> [The clamp] was in my pocket most of the time. I showed [the other jurors], and they said, "Well, that's not part of the evidence." I said, "All I was doing was showing you that the clamp that we're talking about, there's something out there. It's no big deal." And then I put it back in my pocket.

(Hr'g Tr. 5:13–18, July 13, 2009.) He testified that the other jurors were only exposed to the clamp for "maybe ten minutes" during the second day of deliberations. (Hr'g Tr. 5:3–4, 5:22.) He informed the Court that the clamp was never discussed again except when the note was sent to the Court. (Hr'g Tr. 5:23–24.) He also testified that he never brought the clamp back to deliberations,

and thus the clamp was not present during the third day of deliberations. (Hr'g Tr. 6:2.)

At the hearing, Troy's counsel asked the Court to ask the question "[Is this] his verdict?" The Court refused. (Hr'g Tr. 7:11–12.)

## DISCUSSION

### A. *The Allen Charge*

In moving for a new trial, Troy argues that this Court improperly gave two *Allen* charges, and that giving a second charge was unduly coercive and prejudicial.

▮ A so-called *Allen* charge is a jury instruction encouraging a deadlocked jury to continue efforts to reach a verdict. *Allen v. United States*, 164 U.S. 492, 501–02, 17 S.Ct. 154, 41 L.Ed. 528 (1896). The First Circuit requires an *Allen* charge to include statements that "(1) members of both the majority and the minority should reexamine their positions, (2) a jury has the right to fail to agree, and (3) [a reminder of] the burden of [proof]." *United States v. Paniagua–Ramos*, 135 F.3d 193, 197–98 (1st Cir.1998) (quoting *United States v. Manning*, 79 F.3d 212, 222 (1st Cir.1996)). The First Circuit requires "whenever a jury first informs the court that it is deadlocked, any supplemental instruction which urges the jury to return to its deliberations must include the three balancing elements...." *United States v. Angiulo*, 485 F.2d 37, 40 (1st Cir.1973). The purpose of the instruction is to ameliorate the *Allen* charge's coercive effect. *Id.* at 39. Failure to contemporaneously object to an *Allen* charge is evidence that the potential for coercion did not exist. *Lowenfield v. Phelps*, 484 U.S. 231, 240, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). The Court is allowed to give successive *Allen* charges. *United States v. Barone*, 114 F.3d 1284, 1304–05 (1st Cir.1997) (approv-

ing two *Allen* charges given within a short time of each other).

▮ Here, after the jury's initial note seeking the Court's guidance, the Court's response was simply to encourage the jury regarding the prospects of deliberation. It did so without objection. The Court was responding to the jury's inquiry as to how much longer they would have to deliberate *if* they became deadlocked, not a report that they *were* deadlocked. Indeed, the conditional nature of the note and the request for transcripts ten minutes later demonstrated that there was no true deadlock. The Court's initial instruction thus did not constitute an *Allen* charge.

As for the Court's decision to give the actual *Allen* charge, neither party objected. *See Clemente v. Carnicon–Puerto Rico Mgmt. Assocs., L.C.*, 52 F.3d 383, 387 (1st Cir.1995) ("Parties cannot casually forgo contemporaneous objections and then make up for lost ground by means of an afterthought motion for mistrial"), *abrogated on other grounds by United States v. Gray*, 199 F.3d 547 (1st Cir.1999). In any event, after the *Allen* charge was given, the jury deliberated for three to four hours before delivering a verdict. As such, the Court's encouragement on the second day of deliberations and the *Allen* charge given on the third day of deliberations were not unduly coercive or prejudicial to Troy. *See United States v. Vanvliet*, 542 F.3d 259, 270 (citations omitted) (holding that the fact that deliberations lasted for over two hours after an *Allen* charge indicated a lack of coercion); *cf. United States v. Hernandez–Albino*, 177 F.3d 33, 39 (1st Cir. 1999) (holding that the length of deliberations between a flawed *Allen* charge and a verdict can help assess whether the charge was coercive, and finding that an hour of deliberations after the charge indicated a lack of coercion).

### B. *The Clamp*

Troy argues that the Court inadequately investigated the potential prejudicial effect of the introduction of the extraneous clamp during jury deliberations.

The Court took immediate steps to remove the clamp once the Court was notified on day three. However, Troy did not seek a cautionary instruction or immediate voir dire. If Troy's counsel had requested a cautionary instruction, the Court would have given one. It is likely Troy's counsel made a strategic decision not to seek a cautionary instruction because he viewed the juror's clamp as non-prejudicial or as favoring his position that Troy could easily have devised the invention on his own. *See United States v. Ortiz–Arrigoitia,* 996 F.2d 436, 442 (1st Cir.1993) ("a motion for mistrial should be made promptly. This was no case of mistake or inadvertence, but one of deliberate delay for tactical purposes. Failure to make a timely motion for mistrial under these circumstances constitutes a waiver....") After the verdict was reached, each juror was examined pursuant to Fed.R.Evid. 606(b). Troy did not object to the timing, substance, or procedure of the questioning.

At Troy's request, Juror No. 7 was recalled and asked to bring in the clamp. Troy's only beef about the procedure is that the Court failed to ask an improper question about the verdict, exactly what Fed.R.Evid. 606(b) seeks to avoid. "[I]nquiry into the motives of individual jurors and conduct during deliberations is never permissible; any investigation must focus solely on whether the jury was exposed to external influences and, from an objective perspective, whether such influence was likely to have affected the jury's verdict." *Mahoney v. Vondergritt,* 938 F.2d 1490, 1492 (1st Cir.1991); *see United States v. Boylan,* 898 F.2d 230, 259 (1st Cir.1990) (the court is "precluded from investigating the subjective effects of any breach on any jurors") (quotation marks and citation omitted). Thus the Court was correct to refuse to ask Juror No. 7 Troy's question of "is this your verdict?"

Given the initial responses of all the jurors and Juror No. 7's testimony on recall, the Court finds that the clamp's presence did not result in prejudice. Mistrial is available only when the movant can show clear prejudice. *United States v. Glenn,* 389 F.3d 283, 287 (1st Cir.2004). The clamp was not present on the final day of deliberations or when the verdict was reached. Juror No. 7 indicated that the jurors were only exposed to the clamp for about ten minutes and that they quickly objected to it as not being part of the evidence. It was never discussed again except when the note was sent to the Court indicating that the clamp had been present. The jury deliberated for eight hours after the improper presentation of the clamp without considering it in their deliberations. The clamp thus neither tainted nor prejudiced the jury's verdict, and granting a mistrial would be improper.

### ORDER

Troy's Motion for Mistrial [Docket No. 199] is *DENIED.*